## Promen v. Ward
*[Cite as 8 AOA 545]*

*Case No. 90AP-134*
*Franklin County, (10th)*
*Decided December 11, 1990*

*Robert G. Palmer, McCarthy, Palmer, Volkema & Becker, for Appellant.*

*Karen L. Clouse and Scott P. Whonsetler, Jacobson, Maynard, Tuschman & Kalur, for Appellee, Richard M. Ward, M.D.*

REILLY, P.J.

Plaintiff, Shirley A. Promen, appeals from a jury verdict and judgment in favor of defendant, Richard M. Ward, M.D., rendered in the Franklin County Court of Common Pleas and asserts the following assignments of error:

"I. The trial court erred by failing to enter judgment notwithstanding the verdict or to order a new trial since a surgeon of ordinary skill, care and diligence would have operated where he intended to operate, which defendant admitted he did not do.

"II. The judgment is contrary to the manifest weight of the evidence."

The facts relevant to this appeal are generally both undisputed and uncomplicated. Plaintiff slipped and fell on some ice in a parking lot in 1981, injuring her back. Suffering from severe pain and decreased mobility, she was referred to defendant, a board certified orthopedic surgeon, for further treatment in 1984. After performing a number of tests, defendant diagnosed a ruptured disk in plaintiff's lower back located at L5-S1.

The testimony of the two expert witnesses presented at trial explained that the lower spinal column consists of five separate segments called lumbar vertebra. Directly below the last of these segments, L5, is the sacrum or S1. Located between each of the segments is a disk composed of cartilage and surround-

ed by fibrous tissue which serves as a cushion. Each of these disks are identified in terms of the interspace they occupy. Thus, the disk located between the lowermost lumbar vertebra, L5, and the sacrum, S1, is known as L5-S1.

As a result of a back injury, a disk may bulge or rupture and thereby impinge on an adjacent nerve causing pain. One of the recognized treatments for this condition is a laminectomy in which the surgeon removes that part of the disk impinging on the nerve. Defendant testified that his tests revealed a normal disk at L4-L5, and a ruptured disk at the next interspace, L5-S1. Based on the testimony of plaintiff and defendant, and the hospital records admitted into evidence, it is uncontested that defendant intended to perform surgery on the disk previously diagnosed and located at L5-S1. It is also uncontested that defendant performed the procedure on the L4-L5 disk, leaving the L5-S1 disk untouched.

Defendant testified that, upon making his incision and finding a ruptured disk, he assumed that this disk was the L5-S1 disk previously diagnosed. It is assumed that the disk on which defendant operated was ruptured, even though this did not appear in the preoperative tests, as the evidence established that this is not an uncommon occurrence. Defendant also testified that nearly two months after the surgery, he discovered that he had operated on the disk located at L4-L5, and not the disk at L5-S1, and that he informed plaintiff of this fact.

Defendant's office record, written in his own hand and made at the time, indicates that he explained to plaintiff that he "was at the wrong level." Defendant also offered to perform a second operation at no cost to plaintiff.

Following the surgery, plaintiff's symptoms persisted. During the next two years, she consulted three different doctors who recommended various courses of treatment. Nevertheless, defendant continued to recommend surgery on the L5-S1 disc. He testified that he "*** always felt that she had a ruptured disk at the L5-S1 level and that it should be removed." (Tr. 185.) Eventually in 1987, plaintiff sought treatment from Dr. Peek, an orthopedic surgeon practicing in California. Dr. Peek also diagnosed a ruptured disk at L5-S1 and performed a laminec-

tomy on that disk. Since that operation, plaintiff reported excellent progress and relief from her pain.

Plaintiff brought this malpractice action against defendant based upon his failure to perform the operation on the intended disk. At trial, plaintiff presented uncontroverted testimony establishing the foregoing facts, including the testimony of defendant himself.

Defendant, on the other hand, rested his case after presenting only a stipulation not relevant here and an exhibit. The jury returned with a verdict for the defendant, indicating in an interrogatory that they did not find defendant's diagnosis and treatment of plaintiff to be negligent. The trial court overruled plaintiff's motion for a new trial or judgment notwithstanding the verdict and this appeal was filed.

While plaintiff assigns two separate errors, they are not separately argued in the brief submitted to this court. Plaintiff has divided her argument into two sections: one addressing the manifest weight of the evidence and the other addressing the jury instructions. These issues are related and considered together.

To state a cause of action in medical malpractice three elements must be proved. Plaintiff must establish the applicable standard of care, usually through expert testimony; show a negligent failure on the part of the defendant to render treatment in conformity with the standard of care; and demonstrate that the resulting injury was proximately caused by defendant's negligence. *Bruni v. Tatsumi* (1976), 46 Ohio St. 2d 127, paragraph one of the syllabus.

It is important to emphasize the limited scope of plaintiff's case. Plaintiff does not take issue with defendant's failure to discover the ruptured disk at L4-L5. Nor does plaintiff object to the removal of that disk once it was discovered during the operation. The alleged malpractice is limited solely to defendant's failure to remove the previously diagnosed disk at L5-S1, which plaintiff contends resulted in two additional years of pain and suffering.

Plaintiff established by competent and credible evidence each of the three elements of a malpractice case. The applicable standard of care was established primarily through the testimony of Dr. Peek. The standard of care for a surgeon in the practice of a board certi-

fied specialty is that of a reasonable specialist, practicing in the same specialty, and considering the state of scientific knowledge existing in the field when the alleged malpractice occurred. *Bruni, supra,* paragraph two of the syllabus.

Dr. Peek testified that, while several techniques could be used to identify the correct level, the standard requires that one find and operate at the intended level. Given the number of techniques available and the fact that this operation has been performed since the 1950's, he indicated there should be no problem in reaching the intended level. Dr. Peek maintained this opinion throughout cross-examination. Those portions of his testimony now relied on by defendant did not address this crucial issue, but rather addressed defendant's decision to remove the ruptured disk at L4-L5 once it was discovered, a decision not seriously questioned in this case.

As defendant's conduct during the operation is undisputed, the second element, involving a breach of the applicable standard of care, is dependent on the first. Thus, determining the applicable standard of care was the crucial issue presented to the jury in this case.

Finally, defendant's failure to perform the procedure on the intended disk was a proximate cause of plaintiff's continued pain. Both defendant and Dr. Peek testified that the ruptured disc at L5-S1 was a cause of plaintiff's continued disability. While defendant maintained that the disk he actually operated on also contributed to plaintiff's condition, this fact, even if true, does not negate the element of proximate cause. "There may be more than one proximate cause of an injury." *Taylor v. Webster* (1967), 12 Ohio St. 2d 53, 57. The uncontroverted evidence established that the L5-S1 disk upon which defendant failed to operate was the single cause of plaintiff's pain following the first operation. The fact that the disk at L4-L5 would also have contributed to this condition if not removed by defendant is not relevant to the inquiry. It is still apparent that defendant's failure to remove the intended disk was at least one of two causes of plaintiff's injuries.

Defendant offered no evidence other than his own testimony in plaintiff's case. There is only one part of defendant's testimony which could possibly explain the jury's verdict. Asked under what circumstances he would have taken an intra-operative x-ray, defendant stated:

"*** Standard procedure calls for identifying the disk space by whatever measure you identify it: Opening up the disk space. If you find what you expect to find, which is a ruptured disk in her case, to remove the disk and close. If you don't find what you expect to find, which is a ruptured disk, at that point you should take an x-ray to make sure you're where you think you are. In her case, I would not have taken an x-ray because I found a ruptured disk." (Tr. 191.)

Such a standard of care would appear to be unreasonable and it may also have appeared so to the jury, but under the instructions given by the trial court, the jury was not permitted to consider the reasonableness of defendant's practice. At defendant's request and over plaintiff's objections, the court gave the jury the following special instruction:

"*** You're instructed that the law recognizes that there may be different opinions and methods of rendering medical care in a particular situation. The law does not favor one recognized method or procedure to the exclusion of others. If, therefore, you find by a preponderance of the evidence that the care rendered to Mrs. Promen by defendant, Dr. Ward, was in accord with a recognized practice, the following of such recognized method of [sic] practice does not constitute negligence or malpractice even though another physician may believe that a different procedure or method is preferable." (Tr. 407.)

This was the only part of the court's instructions which gave the jury any guidance regarding the standard of care. The court's instruction plainly indicates that if the jury found that defendant's conduct was in accord with a recognized practice, then he was not negligent. This is not the law of Ohio. While customary methods and practices are highly relevant in determining the standard of care, conformity to a recognized practice is not conclusive on the question of negligence. *Ault v. Hall* (1928), 119 Ohio St. 422, paragraph two of the syllabus. Even though well recognized and long continued, standard practices employed in a profession "*** cannot avail to establish as safe in law that which is danger-

ous in fact." *Id.* at paragraph four of the syllabus.

The standard of care is that of a reasonable specialist practicing in the same specialty. It is not simply conformity to a recognized practice or procedure. The jury may consider customary practices as evidence of the standard of care and the fact that other surgeons may have relied on different methods is certainly not conclusive on the question of negligence, but ultimately the jury must decide whether the method or practice used by defendant was reasonable under the circumstances and in accordance with the standard of care. As the court's instruction simply contrasted negligence with conformity to a recognized practice, without qualification, it was misleading and constitutes reversible error. *Ault, supra; Marshall v. Gibson* (1985), 19 Ohio St. 3d 10.

Furthermore, this error emphasized the otherwise incomplete nature of the instructions given to the jury. It is the duty of the trial court to include in its charge to the jury a plain, distinct and unambiguous statement of the law applicable to the case at hand. *Marshall, supra,* at 12. In this case, the court gave the jury a standard negligence instruction, but failed to give an instruction on the standard of care as applicable to a medical malpractice case. Because of his relationship with the plaintiff, defendant owed plaintiff more than a duty of ordinary care.

As a board certified orthopedic surgeon, defendant had a duty to act within the standard of care for other reasonable specialists practicing orthopedic surgery. As the jury was not given an instruction on the applicable standard of care, and was instead given an incorrect instruction on recognized procedures and methods, and considering the overwhelming evidence given by plaintiff in this case, the jury could have been mislead to plaintiff's prejudice by the instructions given.

Therefore, the judgment is against the manifest weight of the evidence and to the extent that plaintiff's assignments of error raised issues regarding the court's instructions to the jury, they are sustained. The judgment of the trial court is reversed, and the case remanded for a new trial consistent with this opinion and in accordance with law.

*Judgment reversed and*
*cause remanded.*

YOUNG and CIRIGLIANO, J.J., concur.

CIRIGLIANO, J., of the Ninth Appellate District, sitting by assignment in the Tenth Appellate District.