SLOAN, Appellant,

v.

**OHIO DEPARTMENT OF REHABILITATION & CORRECTION, Appellee.**

[Cite as *Sloan v. Ohio Dept. of Rehab. & Corr.* (1997), 119 Ohio App.3d 331.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96API08–1072.

Decided April 24, 1997.

*Max Kravitz* and *Marna Karcher*, for appellant.

*Betty D. Montgomery*, Attorney General, *Eric Walker* and *John P. Reichley*, Assistant Attorneys General, for appellee.

BOWMAN, Judge.

Plaintiff-appellant, Kevin Sloan, filed a claim for damages, alleging he received below-standard medical treatment while an inmate at Orient Correctional Institution ("Orient"). Appellant began his confinement in April 1989. Prior to his confinement, appellant was the victim of a hit-and-run accident, which resulted in a below-the-knee amputation of his left leg. Appellant testified that, upon his arrival at Orient, he was using a specially made wheelchair and aluminum crutches because of his height, 6'5", and his weight, which fluctuates between two hundred fifty and three hundred pounds. These items were taken from him and he was issued standard wooden crutches. His first day at Orient, he was taken to Frazier Health Center ("Frazier") because his prosthesis was causing his stump to bleed.

Prior to October 1990, appellant had continuous trouble with his prosthesis. He experienced pain and developed blisters and wounds on his stump. The prosthesis was worked on several times in an attempt to obtain a better fit. Eventually, a new prosthesis was created for appellant; however, before a new one was made, the doctors at Frazier wanted appellant to refrain from wearing his prosthesis while his stump was infected because the friction impaired the

healing. Despite the medical advice, appellant continued to wear the prosthesis. In September 1990, the doctor ordered that appellant's prosthesis be locked up at the nurses' station to prevent appellant from wearing it until his stump healed. Appellant complained frequently about his inability to use crutches and that the wooden crutches bowed under his weight. Appellant also testified that he fell several times before October 26, 1990.

In October 1990, while using the wooden crutches and not wearing the prosthesis, appellant alleges, one crutch broke and he fell and fractured the left radius bone in his arm. He required surgery and has permanent limited mobility and use of his left arm.

Appellant filed a complaint in the Ohio Court of Claims alleging that, as a result of appellee's medical malpractice, he suffered permanent injury to his arm. Appellant claimed that the state of Ohio breached its duty of care by ordering him to use crutches, providing him with defective crutches, and failing to provide him with a wheelchair. Appellant also claimed that he was given codeine and Keflex, even though he is allergic to codeine and penicillin. The court bifurcated the issues of liability and damages.

The Court of Claims found that the state of Ohio owed appellant a duty of reasonable care. The court further found that appellant failed to prove that the state's failure to provide him with a wheelchair and its order that he use crutches were breaches of this duty of care. The court found that appellant did not prove that a defective crutch was the proximate cause of his injury. Finally, the court found that appellant failed to prove that the state breached its duty of care in prescribing the medications. Rather, the court found that appellant caused his own injuries by not refusing to take the prescribed drugs and that he failed to prove that any adverse reaction was caused by a drug containing codeine. The court further found that Keflex was not a penicillin derivative.

Appellant appealed and raises the following assignments of error:

"1. The Court of Claims erred by applying an erroneous legal standard when determining the negligence of the medical staff of the Ohio Department of Rehabilitation and Corrections.

"2. The Court of Claims erred by rendering a verdict in favor of the defendant and against the plaintiff, Kevin Sloan, because the verdict of the Court of Claims was against the manifest weight of the evidence as to the injury caused from plaintiff's fall while using crutches.

"3. The Court of Claims erred by holding that defendant was not negligent when the medical staff prescribed medications to plaintiff which the staff knew would cause plaintiff to have allergic reactions requiring treatment."

By the first assignment of error, appellant contends that the Court of Claims erred in applying the incorrect legal standard when determining the negligence of the medical staff of the Ohio Department of Rehabilitation and Corrections. The Court of Claims applied a negligence standard and determined that appellee only owed appellant the common-law duty of reasonable care.

Appellant is correct that the Court of Claims applied the incorrect legal standard. The Supreme Court of Ohio established the legal standard for medical malpractice in *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 129–130, 75 O.O.2d 184, 186, 346 N.E.2d 673, 676, as follows:

"In evaluating the conduct of a physician and surgeon charged with malpractice, the test is whether the physician, in the performance of his service, either did some particular thing or things that physicians and surgeons, in that medical community, of ordinary skill, care and diligence would not have done under the same or similar circumstances, or failed or omitted to do some particular thing or things which physicians and surgeons of ordinary skill, care and diligence would have done under the same or similar circumstances. He is required to exercise the average degree of skill, care and diligence exercised by members of the same medical specialty community in similar situations."

In *Promen v. Ward* (1990), 70 Ohio App.3d 560, 565, 591 N.E.2d 813, 816–817, the court held that the standard of care applicable in a medical malpractice action is more than a duty of ordinary care, which is the standard of care that the Court of Claims applied.

We are aware of the general rule that, while in custody, prisoners are owed a duty of reasonable care; however, appellant's claim arises from an allegation of medical malpractice. In *Buerger v. Ohio Dept. of Rehab. & Corr.* (1989), 64 Ohio App.3d 394, 581 N.E.2d 1114, this court found the *Bruni* standard applicable to a claim for medical malpractice brought by a prisoner.

Appellee contends that the standard in *Bruni* is not applicable to prisoners and cites *Clemets v. Heston* (1985), 20 Ohio App.3d 132, 20 OBR 166, 485 N.E.2d 287, in support of its argument. *Clemets* has no application to the facts of this case, as *Clemets* dealt with the duty of custodial officers to prisoners after their release. Clemets was arrested for operating a motor vehicle while under the influence of alcohol and taken to the police station for the purpose of administering an Intoxilyzer test, which Clemets refused. After completing the required paperwork and issuing him a citation, the arresting officer drove Clemets back to his car. After the officer left, Clemets shot himself. *Clemets* did not involve a claim for medical malpractice.

However, in order for this court to reverse the judgment, there must be prejudice demonstrated because, if appellant provided no evidence of malpractice, there would be no harm demonstrated by the Court of Claims' decision.

Appellant testified that he has a history of heart disease, high blood pressure and angina. He has a fear of falling on crutches and did not want to use crutches. He repeatedly requested a wheelchair and complained about the crutches bowing because they were insufficient to hold his weight. Appellant contends that the crutch broke and caused his injury because he was too heavy for standard crutches. When his prothesis was taken away, he strongly protested. Also, the first time he had been without either the use of his prothesis or a wheelchair was when his prothesis was taken in September 1990, shortly before his fall.

Appellant presented the testimony of three experts, each of whom testified that the care appellant received was below the accepted standard of care in the medical community. The first to testify was Christina Rogers, R.N., the Director of Nursing Services at Columbus Quality Care Nursing and Rehabilitation Center. She oversees direct patient care and works with the physical therapists. She testified that crutches are not used in her facility because they present a high risk for mobility. Her opinion that the standard of care delivered to appellant was below the professional standard was based on appellant's history of falls and the fact that crutches provided the highest risk for ambulation. She stated that she would have questioned the physical therapist as to why appellant was refusing to use the crutches. She testified that appellant's requests for a wheelchair should have been honored. She also testified that it is a nurse's duty to question a physician if the nurse feels that the physician is ordering something contrary to the best interests of the patient.

The second expert who testified for appellant was Nancy Kosta, R.N., a staff nurse at Harding Hospital. Kosta testified that the standard of medical care is the same whether the patient is voluntarily or involuntarily committed. Kosta had reviewed appellant's medical records and testified that, if a comprehensive plan of care had been in place for appellant, his care would have been different based upon the facts that he had experienced falls, he had a fear of falling, and the crutches were an inadequate means of ambulation considering his height and weight. Kosta testified that his previous falls should have indicated that crutches were an inadequate means of ambulation and an adequate means should have been provided. Kosta also stated that all patients have the right to refuse medical treatment.

The third expert to testify for appellant was Vincent A. Spagna, M.D., the Medical Director of the Franklin County Jail. Spagna testified that, although there are differences between patients in the general population versus patients

in jail, there is no difference in the duty of the physician as to the standard of care. All patients have the right to refuse medical treatment, whether an inmate or not. Spagna also testified that the failure to provide accepted professional medical care to appellant caused his injury.

Spagna testified that the medical staff breached the accepted standard of care by ordering crutches for a patient who had heart disease, angina, who had expressed a fear of falling and had previously fallen. Spagna testified that crutches increased the risk of falling for a person on one leg and also increased the risk of an anginal episode. Spagna also stated that standard wooden crutches are made for individuals 6'4" or less, and appellant's weight of over two hundred fifty pounds provided an unusual weight for wooden crutches to bear.

Appellee's expert, Herbert R. Estis, M.D., the Medical Director at Orient, acknowledged that the nurse's decision not to record appellant's complaint concerning the bowing crutches or to investigate the complaint was a "poor decision." Also, he answered affirmatively when asked if a fall and injury are foreseeable possibilities when a patient's crutches are bowing because they are insufficient for that patient's weight.

Thus, appellant's first assignment of error is well taken.

By the second assignment of error, appellant contends that the Court of Claims erred by rendering a verdict in appellee's favor because the verdict of the Court of Claims was against the manifest weight of the evidence as to the proximate cause of the injury resulting from appellant's fall while using crutches.

The trial court found appellant failed to demonstrate that the crutches he was using were defective and broke under his weight. Rather, the court found that there was evidence that he slipped and fell in a puddle of water and it was this fall that caused the crutch to break. Thus, the trial court found that, even assuming that appellee breached a duty of care owed to appellant, he still failed to establish that this breach was the proximate cause of his injury. As discussed in the first assignment of error, the trial court applied an incorrect standard to the evidence and failed to consider the issue of proximate cause in light of that standard. On remand, it will be necessary for the court to determine, even if appellant slipped on water on the floor, whether his fall was nonetheless proximately caused by appellee's failure to provide appropriate medical care. We note that, on cross-examination, appellee's expert testified:

"Q: Okay. In your opinion, is it appropriate to place an inmate who has a history of falling, who has been required to use crutches, who is an amputee, who has expressed a fear of falling, and expressed a fear of falling using crutches, in a dormitory bay immediately outside a shower near an ice machine and a water fountain?

"A.   What was the first part of question, is it prudent?

"Q.   Is it medically appropriate?

"A.   No."

The second assignment of error is sustained.

By the third assignment of error, appellant contends that the Court of Claims erred by holding that appellee was not negligent when the medical staff prescribed medications to appellant that the staff knew would cause appellant to have allergic reactions requiring treatment. The Court of Claims found that, since appellant did not refuse to take the medications and did not request a different prescription but, rather, took the medications, his own actions caused his injuries. The Court of Claims also found that appellant did not prove that he had suffered an adverse reaction to a drug containing codeine and did not prove that Keflex was a derivative of penicillin and caused an adverse reaction.

Appellant did provide evidence that the medical staff was aware that he was allergic to penicillin and codeine. Several places in appellant's medical records indicate that appellant was allergic to both penicillin and codeine. On May 9, 1989, appellant was prescribed Tylenol with codeine, and he testified that his eyes swelled shut and his tongue swelled. Appellee's expert admitted that it was a mistake with the following testimony:

"Q.   Would that be inappropriate to prescribe codeine for an individual who's maintained in six different records prior to this time that he's allergic to codeine?

"A.   I'd say that's an error.

"Q.   Would that fall below the standard of care that we normally associate and attribute to medical professionals?

"A.   It's a mistake.

" * * *

"Q.   Prescribe drugs for an individual when the charting of the individual indicates that the individual is allergic to the particular substances?

" * * *

"A.   If I knew that the patient was allergic to a substance I would not prescribe that.

"Q.   Okay. And so the doctor's order of May 9th regarding codeine is definitely inappropriate, correct?

"A.   Yes. Yes."

Although appellee's expert testified that Keflex is not a penicillin-derivative drug, he stated that, under certain circumstances, Keflex should not be given to

patients who are allergic to penicillin. He stated that the Physicians' Desk Reference states that cephalosporin, of which Keflex is a derivative, should be given cautiously to penicillin-sensitive patients and there are some indications of cross-allerginicities with penicillin. Appellee's expert also testified concerning an emergency room report of appellant, which stated that he had hives three days after taking Keflex, and the expert testified that the reaction was possibly because of the Keflex. Appellee's expert also testified that, although he had prescribed Keflex to a patient who is allergic to penicillin, he felt "lucky" that the patient did not have an adverse reaction. This testimony does not establish an adverse reaction as a result of Keflex to a reasonable medical certainty.

Given the above evidence, the Court of Claims erred in finding that appellant was at fault for taking the prescribed medications without also finding that appellant was informed what medications were being prescribed. The essential question was whether appellee fell below the standard of care in prescribing medications when the medical records demonstrated that appellant was allergic to these medications. Appellant's third assignment of error is well taken as to codeine, but not well taken as to Keflex.

For the foregoing reasons, appellant's first and second assignments of error are sustained, and the third assignment of error is sustained in part and overruled in part, the judgment of the Ohio Court of Claims is reversed, and this matter is remanded to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

PEGGY BRYANT and DESHLER, JJ., concur.