OPINION
{¶ 1} Defendants-appellants Pete and Chris Geiger appeal the judgment of the Union County Court of Common Pleas awarding plaintiff-appellee Greg Ward, d.b.a. Ward Construction, $46,187.14.
 {¶ 2} Ward and the Geigers entered a written construction contract. Ward agreed to provide the materials and labor necessary to build the Geigers' home. In exchange, the Geigers agreed to pay Ward $387,024.
 {¶ 3} During the building process, the Geigers asked Ward to make additions to the original work drawings and specifications. For instance, the Geigers asked Ward to add "limestone caps" on a retaining wall, a heat pump to the home, and "window boxes" on seven different windows. Ward made the additions and many others. However, neither party placed the agreements for any of the additions in writing.
 {¶ 4} Ward later asked the Geigers to pay for the additions. The Geigers refused to do so. Ward's expenditures and the Geigers' payments at that time totaled $446,358.71 and $382,897.49, respectively. Since the Geigers refused to pay for the additions, Ward stopped building the home.
 {¶ 5} Ward filed a complaint in the Union County Court of Common Pleas against the Geigers that alleged breach of contract and unjust enrichment. The Geigers denied Ward's claims and filed counterclaims alleging, among other things, breach of contract and violations of the Ohio Consumer Sales Practices Act (OCSPA).
 {¶ 6} The case proceeded to a jury trial. During trial, the trial court granted a directed verdict against Ward on his breach-of-contract claim. However, the jury found in favor of Ward on his unjust-enrichment claim in the amount of $46,187.14. The jury also found against the Geigers on their respective counterclaims. The trial court entered judgment on the verdicts.
 {¶ 7} It is from this decision that the Geigers appeal and set forth seven assignments of error for our review. For purposes of clarity, we address the Geigers' second and third assignments of error out of the order they presented them to us in their brief.
 ASSIGNMENT OF ERROR NO. I The trial court erred when it failed to grant Appellant's Motion for Directed Verdict pursuant to Ohio Rule [of] Civil Procedure 50 on Appellee's claim of unjust enrichment.
 {¶ 8} In their first assignment of error, the Geigers argue that the price in the written contract covered the construction of the homeand the additions. Thus, the Geigers conclude that the written contract bars Ward from bringing an unjust-enrichment claim, and the trial court erred in refusing to grant a directed verdict on that basis. For the reasons that follow, we find the Geigers' first assignment of error lacks merit.
 {¶ 9} Civ. R. 50(A)(4) provides that a trial court shall grant a party's motion for directed verdict if, after construing the evidence most strongly in favor of the party against whom the motion is directed, reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to the party against whom the motion is directed.
 {¶ 10} A motion for a directed verdict presents a question of law.Good Year Tire Rubber Co. v. Aetna Cas. Sur. Co., 95 Ohio St.3d 512,2002-Ohio-2842, 769 N.E.2d 835 at ¶ 4, citing O'Day v. Webb (1972),29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896, paragraph three of the syllabus. As such, we review a trial court's decision to grant or deny the motion de novo. Cleveland Elec. Ilium. Co. v. Pub. Util. Comm.
(1996), 76 Ohio St.3d 521, 523, 668 N.E.2d 889.
 {¶ 11} Absent fraud, illegality, or bad faith, a party cannot bring a claim for unjust enrichment when a contract addresses the same subject underlying the claim. Aultman Hosp. Assn. v. Cmty. Mut. Ins. Co. (1989),46 Ohio St.3d 51, 55, 544 N.E.2d 920, citing Ullmann v. May (1947),147 Ohio St. 468, 34 O.O. 384, 72 N.E.2d 63, paragraph three of the syllabus. Under those circumstances, the contract affords the appropriate relief. Ullmann, 147 Ohio St. at 477-478.
 {¶ 12} As pertinent to this appeal, the written contract provides:
 Article I. The Contractor agrees to provide all the materials as specified and to perform all the labor shown on the Working Drawings and described in the Specifications for the erection of a dwelling for the owner at 17277 Robinson Road[,] City of Marysville[,] County of Union[,] State of Ohio, 43040[.]
 * * *
 Article III. The Owner agrees to pay the Contractor in current funds for the performance of the contract $387,024, subject to any additions or deductions to the General Conditions of the Contract agreed upon in writing, and to make payments on account hereof upon presentation of proper lien waivers, as the work progresses * * *.
(Emphasis added.)
 {¶ 13} Given this language, we find that the price in the written contract covers the construction of the home but not any additions thereto. We also find the subject of the contract is distinct from that of Ward's unjust-enrichment claim. Therefore, we conclude the contract does not bar Ward from bringing an unjust-enrichment claim to recover the cost of the additions, and the trial court did not err when it denied the Geigers' motion for directed verdict on that basis.
 {¶ 14} The Geigers' first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. III The trial court erred by admitting improper evidence related to the total amount expended in the construction of Appellant's residence.
 {¶ 15} In their third assignment of error, the Geigers argue the trial court erred when it did not exclude hundreds of invoices documenting not just the cost of the additions, but the total cost to build the home. We find the Geigers' third assignment of error to be well taken because some of the invoices do not distinguish between the cost of the additions and the cost of any overages under the contract.
 {¶ 16} A trial court maintains discretion as to whether to admit or exclude evidence. Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269, 271,569 N.E.2d 1056. Thus, we will not overturn the trial court's decision on that issue unless the trial court abused its discretion. Id. An abuse of discretion suggests a decision is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,5 OBR 481, 450 N.E.2d 1140.
 {¶ 17} The Geigers argue the trial court erred when it admitted the invoices because Ward did not authenticate them. Authentication is a prerequisite to admissibility. Evid. R. 901(A). A proponent satisfies the prerequisite by introducing evidence sufficient "to support a finding that the matter in question is what [the] proponent claims." Id.
 {¶ 18} At trial, Ward identified the invoices as "a list of how much money was paid out to individuals or companies supplying * * * the material and labor to the job site." Ward also testified the "invoices * * * justified] and backed[ed] up the money spent on the [Geiger] project." We believe Ward's description sufficiently authenticated the invoices under Evid. R. 901(A). Therefore, we find that the Geigers' argument in this regard is unpersuasive.
 {¶ 19} The Geigers also argue that the trial court erred when it admitted the invoices documenting the total cost to build their home. The Geigers reason the jury used the invoices and other exhibits to improperly calculate Ward's damages under the "total cost method," i.e., the difference between the total cost to build their home and the contract price.[1] See, e.g., Blue Chip Paving Maint., Inc. v. Ryan'sFamily Steak Houses, Inc., 12th Dist. No. CA2003-09-072, 2004-Ohio-3357 (rejecting "total cost method" when calculating damages for unjust-enrichment claim).
 {¶ 20} After reviewing the record, we cannot say that the jury calculated Ward's damages under the "total cost method." Nevertheless, we note that not all of the invoices accurately account for Ward's damages because not all of the invoices distinguish between the cost of the additions and the cost of any overages under the contract. For example, several invoices provide the exact cost for the addition of the "limestone caps" on the retaining wall. But other invoices do not provide the exact cost for additions that involved materials intertwined with the actual construction of the home, such as brick work, masonry work, and "building labor." In fact, Ward admitted as much on cross-examination:
 [Geigers' Counsel]: [I]sn't it true that all the invoices * * * in no way reflect if the materials were provided as a change order or for the completion of the house according to the specifications?
 [Ward]: Correct.
 [Geigers' Counsel]: Isn't it true that on direct you testified that the amounts for the alleged additions come to a certain dollar amount, correct?
 [Ward]: Yes.
 [Geigers' Counsel]: Isn't it also true that you were unable to actually separate and put a dollar amount with each alleged addition?
 [Ward]: No.
 [Geigers' Counsel]: So you can do that for us?
 [Ward]: I would — it was done for the Geigers early [sic] `04.
 [Geigers' Counsel]: But today — we have all the invoices marked as Plaintiff's Exhibit 8-A to 8-PP. And in all these items, all these invoices, are you able to go and say, this was for the additional costs?
 [Ward]: No.
 [Geigers' Counsel]: So all of these large invoices, they are for the entire project, correct?
 [Ward]: The total project, yes.
 [Geigers' Counsel]: So all of these invoices, you're unable to say the amount that was spent according to the contract, correct?
 [Ward]: Correct.
 {¶ 21} The invoices that fail to distinguish between the cost of the additions and any overages under the contract do not serve as a proper basis from which to calculate Ward's damages. We must, therefore, conclude that the trial court abused its discretion when it failed to exclude the invoices that did not accurately account for the cost of the additions at issue.
 {¶ 22} The Geigers' third assignment of error is sustained.
 ASSIGNMENT OF ERROR NO. II The jury erred by utilizing the incorrect measure of damages.
 {¶ 23} In their second assignment of error, the Geigers argue the jury erred when it awarded $46,187.14 on Ward's unjust-enrichment claim. For the reasons that follow, we find the Geigers' assignment of error to be well taken.
 {¶ 24} Unjust enrichment derives from the equitable principal that no person may retain a benefit that would result in injustice.Hambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179, 183,12 OBR 246, 465 N.E.2d 1298. Accordingly, unjust enrichment entitles a party to restitution for the reasonable value of a benefit conferred. St. VincentMed. Ctr. v. Sader (1995), 100 Ohio App.3d 379, 384, 654 N.E.2d 144.
 {¶ 25} Ward introduced a variety of exhibits to support his claim. As discussed above, Ward introduced hundreds of invoices. Ward also introduced several specification sheets that he gave to the Geigers, as well as a chart that listed the estimates for the materials used to build the home, the amounts Ward paid for the materials, the amounts the Geigers owed Ward, and the amounts Ward owed the Geigers. Based on the foregoing exhibits, Ward sought $46,673.01. The jury awarded substantially all of that amount.
 {¶ 26} We find that Ward's additional exhibits, like the invoices, do not distinguish between the cost for some of the additions and any overages under the contract. Given this uncertainty, it is impossible to determine from Ward's invoices and exhibits whether the $46,187.14 damage award represents the benefit Ward conferred upon the Geigers or some different amount. We must, therefore, conclude the jury erred when it awarded damages on Ward's unjust-enrichment claim on the basis of this undifferentiated evidence.
 {¶ 27} The Geigers second assignment of error is sustained.
 ASSIGNMENT OF ERROR NO. IV The trial court erred by granting Appellee's Motion for a Jury View.
 {¶ 28} In their fourth assignment of error, the Geigers argue the trial court erred when it permitted the jury to view their home. The Geigers believe the trial court erred because their home was large, it was in good condition at the time of the visit, and the jury gathered evidence during the view. For the reasons that follow, we find the Geigers' fourth assignment of error lacks merit.
 {¶ 29} R.C. 2315.02 authorizes a trial court to grant a jury view of property that is the subject of litigation. The purpose of a jury view is to enable the jury to understand and apply the evidence offered at trial; it is not to allow the jury to gather evidence. Lacy v. UgandaInv. Corp. (1964), 7 Ohio App.2d 237, 241, 29 O.O.2d 177,195 N.E.2d 586.
 {¶ 30} A trial court's decision to allow a jury view is discretionary.Schwartz v. Wells (1982), 5 Ohio App.3d 1, 2, 5 OBR 1, 449 N.E.2d 9;Dunkle v. Standard Life Acc. Ins. Co. (1961), 114 Ohio App. 65, 67,18 O.O.2d 340, 180 N.E.2d 198. As such, we will not overturn the trial court's decision on that issue unless the trial court abused its discretion. Id.
 {¶ 31} The Geigers argue that they were prejudiced by the jury view. But the Geigers fail to point to anything in the record demonstrating how the size of their home or its condition at the time of the view influenced the jury. Moreover, we have thoroughly reviewed the record and have found no indication of any prejudice.
 {¶ 32} The Geigers also argue the jury gathered evidence during the view because a member of the jury asked a question at trial about the carpeting in the basement even though neither party discussed the topic. Although we find the jury's question to be unusual, we cannot say, without more, that it substantiates the Geigers' conclusion.
 {¶ 33} We believe that under the particular facts of this case a jury view could have enabled the jury to better understand the evidence offered at trial. We must, therefore, conclude that the trial court did not abuse its discretion when it permitted the view.
 {¶ 34} The Geigers' fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. V The trial court erred when it failed to properly charge the jury regarding Appellants' Consumer Sales Practices Act violations claim.
 {¶ 35} In their fifth assignment of error, the Geigers argue that the jury instructions regarding their OCSPA counterclaim were unclear and, therefore, prejudicial. For the reasons that follow, we find the Geigers' assignment of error to be well taken.
 {¶ 36} A trial court has discretion in determining the precise language to include in its instructions to the jury. Cabe v. Lunich
(1994), 70 Ohio St.3d 598, 602, 640 N.E.2d 159. It is the trial court's duty, however, to include in its instructions a correct, clear, and complete statement of the law. See Sharp v. Norfolk W. Ry. Co. (1995),72 Ohio St.3d 307, 312, 649 N.E.2d 1219, citing Marshall v. Gibson
(1985), 19 Ohio St.3d 10, 12, 19 OBR 8, 482 N.E.2d 583; see, also,Promen v. Ward (1990), 70 Ohio App.3d 560, 566, 591 N.E.2d 813 ("It is the duty of the trial court to include in its charge to the jury a plain, distinct and unambiguous statement of the law applicable to the case at hand."). Ambiguity in jury instructions does not constitute reversible error unless the jury was probably misled "in a matter materially affecting the complaining party's substantial rights."Becker v. Lake Cty. Mem. Hosp. W. (1990), 53 Ohio St.3d 202, 208,560 N.E.2d 165.
 {¶ 37} The OCSPA prohibits a supplier from committing unfair, deceptive, or unconscionable acts or practices in consumer transactions. R.C. 1345.01 et seq. The Ohio Administrative Code defines a variety of acts and practices as being deceptive within the meaning of the OCSPA. Ohio Adm. Code 109:4-3-01(A)(2). Notably, the OCSPA applies to contracts involving the construction of a home. Keiber v. Spicer Constr. Co.
(1993), 85 Ohio App.3d 391, 392, 619 N.E.2d 1105; Fesman v. Berger (Dec. 6, 1995), 1st Dist. No. C-940400, at *4.
 {¶ 38} In their OCSPA counterclaim, the Geigers assert that Ward failed to inform them at any time that they had a right to an estimate regarding the additions. See Ohio Adm. Code. 109:4-3-05(B). The Geigers also assert that Ward did not provide them with a form that specifically detailed the cost of the additions. See Ohio Adm. Code 109:4-6-05(D)(12). Based on these assertions, the Geigers conclude Ward committed multiple deceptive acts under the OCSPA.
 {¶ 39} The jury instructions at issue included a general discussion of unfair, deceptive, and unconscionable acts under the OCSPA, as well as the degree of proof needed to prove such acts. The jury instructions also included eleven supplemental interrogatories. Ten of the interrogatories asked the jury to determine whether Ward committed certain acts which corresponded with per se violations of the OCSPA.[2] The additional, "catch-all" interrogatory asked generally whether Ward committed an unfair, deceptive, or unconscionable act. The jury answered all eleven interrogatories in the negative.[3]
 {¶ 40} The Geigers argue that the jury instructions were unclear because they did not list specific acts, which had previously been declared per se deceptive acts under the OCSPA and which the Geigers alleged Ward committed in this case, separately from the interrogatories. Had the instructions done so, the Geigers conclude, the jury would have reached a different result regarding the counterclaim.
 {¶ 41} After considering the jury instructions as a whole, we cannot say that the use of the interrogatories alone provided the jury with a clear, unambiguous statement of the law. And without more, the jury could have concluded from the interrogatories as written that Ward failed to do the acts required under the OCSPA and that Ward did not commit a deceptive act or practice. Since this ambiguity in the jury instructions enabled the jury to make inconsistent findings, we conclude that the jury instructions regarding the Geigers' OCSPA counterclaim were unclear and probably did mislead the jury "in a matter materially affecting the [Geigers'] substantial rights."
 {¶ 42} The Geigers' fifth assignment of error is sustained.
 ASSIGNMENT OF ERROR NO. VI The jury verdict was against the manifest weight of the evidence on the Appellants' Consumer Sales Practices Act violation.
 {¶ 43} In their sixth assignment of error, the Geigers argue that the jury's verdict regarding their OCSPA counterclaim is against the manifest weight of the evidence. For the reasons that follow, we find the Geigers' assignment of error to be well taken.
 {¶ 44} In determining whether a judgment is against the manifest weight of the evidence, we cannot substitute our judgment for that of the jury. The jury is in a better position to observe the demeanor of the witnesses, examine the evidence, and weigh the credibility of the testimony and evidence. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. Instead, we must determine whether the jury's verdict is supported by some competent, credible evidence going to all the essential elements of the case. Id.; C.E.Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 280,8 O.O.3d 261, 376 N.E.2d 578.
 {¶ 45} As we noted in our analysis of the Geigers' fifth assignment of error, the OCSPA prohibits a supplier from committing deceptive acts or practices in consumer transactions, R.C. 1345.01 et seq., and the Ohio Administrative Code defines a variety of acts and practices as being deceptive within the meaning of the OCSPA, Ohio Adm. Code 109:4-3-01(A)(2). If a supplier commits a deceptive act or practice, the consumer "may rescind the transaction or recover * * * three times the amount of his actual damages or two hundred dollars, whichever is greater * * *." R.C. 1345.09(B).
 {¶ 46} In this case, the Geigers argue Ward violated Ohio Adm. Code 109:4-3-05(B) and, consequently, the OCSPA. Ohio Adm. Code 109:4-3-05(B) provides:
 It shall be a deceptive act or practice in connection with a consumer transaction involving the performance of either a repair or a service where the anticipated cost exceeds twenty-five dollars and where any portion of the repair or service is to be performed at the consumer's residence, for a supplier to fail to orally inform the consumer at the time of the initial face to face contact and prior to the commencement of any repair or service, of the consumer's right to receive a written or oral estimate and to provide the consumer with a form which conforms to the requirements of paragraph (A)(1) of this rule.
Ohio Adm. Code 109:4-3-05(G) also provides:
 In lieu of complying with the requirements of paragraphs (A), (B), and (C) of this rule, a supplier may provide a consumer, prior to the commencement of any repair or service, with a written quotation of the price at which the repair or service will be performed, which shall indicate that the quotation shall be binding upon the supplier for a period of five days, provided that the subject of the consumer transaction is made available to the supplier for the repair or service within that period.
 {¶ 47} Significantly, the trial transcript reflects the following:
 [Geigers' Counsel]: Isn't it true that at the initial meeting with the Geigers, before you entered into the contract, you did not represent to them that if there were any changes, they had a right to an estimate?
 [Ward]: Correct.
 {¶ 48} Based on Ward's testimony, we find that Ward admitted he did not comply with the mandates of Ohio Adm. Code 109:4-3-05(B). We further find that the specification sheets Ward gave the Geigers do not satisfy Ohio Adm. Code 109:4-3-05(G) because they do not properly account for the additions at issue. Nor was any evidence introduced which demonstrated that Ward otherwise complied with Ohio Adm. Code 109:4-3-05(G). We must, therefore, conclude that the jury's verdict on the Geigers' OCSPA counterclaim is not supported by competent, credible evidence.
 {¶ 49} The Geigers also argue Ward committed a second deceptive act under Ohio Adm. Code 109:4-3-05(D)(12) and, as a result, an additional violation of the OCSPA. Ohio Adm. Code 109:4-3-05(D)(12) provides:
 (D) In any consumer transaction involving the performance of any repair or service it shall be a deceptive act or practice for a supplier to:
 * * *
 (12) Fail to provide the consumer with a written itemized list of repairs performed or services rendered, including a list of parts or materials * * *, and the cost thereof to the consumer, the amount charged for labor, and the identity of the individual performing the repair or service[.]
 {¶ 50} The trial transcript evinces the following:
 [Geigers' Counsel]: Did you ever — you never did provide the Geigers with a document that indicated what materials were provided, the cost of those materials and also the amount of labor for each specific addition or even the changes further into the contract, correct?
 [Ward]: The changes issued by the Geigers, documentation and invoices were provided.
 [Geigers' Counsel]: But it was not provided on one document created by you, correct?
 [Ward]: No.
 {¶ 51} Ward provided the Geigers general lists documenting the increased cost of the project. Ward also provided the Geigers with copies of the invoices documenting the total cost to build their home. Notably, however, neither the lists nor the copies addressed the additions at issue with any particularity. Thus, we find Ward did not provide a "written itemized list" regarding the additions sufficient to satisfy Ohio Adm. Code 109:4-3-05(D)(12). Accordingly, an additional reason exists to conclude the jury's verdict on the Geigers' OCSPA counterclaim is not supported by competent, credible evidence.
 {¶ 52} The Geigers' sixth assignment of error is sustained.
 ASSIGNMENT OF ERROR NO. VII The trial court erred in overruling Appellants' Motion for Judgment Not Withstanding [sic] the Verdict or, in the alternative, Motion for a New Trial.
 {¶ 53} In their seventh assignment of error, the Geigers argue the trial court erred when it overruled their motion for judgment notwithstanding the verdict under Civ. R. 50(B) or, in the alternative, a new trial under Civ. R. 59(A). In support, the Geigers claim the written contract barred Ward's unjust-enrichment claim, and Ward admitted during trial to committing violations of the OCSPA.
 {¶ 54} We review de novo a trial court's decision to grant or deny a motion for judgment notwithstanding the verdict. Schafer v. RMSRealty (2000), 138 Ohio App.3d 244, 257-258, 741 N.E.2d 155. A trial court should only grant a motion for judgment notwithstanding the verdict if, after construing the evidence most strongly in favor of the party against whom the motion is directed, there is no substantial evidence supporting the non-moving party's side and reasonable minds may reach but one conclusion. Posin v. A.B.C. Motor Court Hotel (1976),45 Ohio St.2d 271, 275, 74 O.O.2d 427, 344 N.E.2d 334. An appellate court's review of the trial court's decision, however, does not involve weighing the evidence. Id.
 {¶ 55} Our analysis and disposition of the Geigers' first and sixth assignments of error informs our decision on the Geigers' seventh assignment of error. After construing the evidence most strongly in Ward's favor, we find the written contract did not bar Ward's unjust-enrichment claim. As to the Geigers' OCSPA counterclaim, Ward admitted two violations of the OCSPA, no substantial evidence supports Ward's position, and reasonable minds can reach but one conclusion. Therefore, we conclude the trial court did not err when it denied the Geigers' motion under Civ. R. 50(B) as to Ward's unjust-enrichment claim, but it did err when it denied the motion in regard to the OCSPA counterclaim.
 {¶ 56} Additionally, Civ. R. 59(A) enumerates the grounds for a new trial. Civ. R. 59(A)(6) provides a new trial is warranted when a judgment is not sustained by the weight of the evidence. Since a trial court's decision to grant or deny a motion for a new trial is discretionary, we will not overturn the trial court's decision absent an abuse of discretion. See Bellman v. Ford Motor Co., 3d Dist. No. 12-04-11,2005-Ohio-2777, at ¶ 24, citing Oakman v. Wise (May 25, 2000), 3d Dist. No. 5-2000-01, at *2.
 {¶ 57} We previously found the written contract did not bar Ward's unjust-enrichment claim. But we also found that the jury's verdict regarding the Geigers' OCSPA counterclaim was not supported by competent, credible evidence. Based on our findings, we conclude the trial court did not err when it denied the Geigers' alternative motion regarding Ward's unjust-enrichment claim, but it did err when it denied the motion in regard to the OCSPA counterclaim.
 {¶ 58} The Geigers' seventh assignment of error is sustained.
 {¶ 59} Having found error prejudicial to the appellant herein, in the second, third, fifth, sixth, and seventh assignments of error, we reverse the judgment of the trial court in part and remand the matter for a new trial in accordance with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
 BRYANT, P.J., and SHAW, J., concur. r
[1] We note the correctness of the jury's damage calculation is a different question which we address in our discussion of the Geigers' second assignment of error.
[2] For example, the fifth interrogatory, which related to Ohio Adm. Code 109:4-3-05(B), provided:
 Do you find by the greater weight of the evidence that Plaintiff committed an unfair or deceptive act or practice by failing to orally inform the Defendants at the time of the initial face to face contact and prior to the commencement of the construction of their residence, or any additions or changes thereto, [sic] their right to receive a written or oral estimate?
The seventh interrogatory, which coincided with Ohio Adm. Code 109:4-6-05(D)(12), also provided:
 Do you find by the greater weight of the evidence that Plaintiff committed an unfair or deceptive act or practice by failing to provide the Defendants with an itemized list of the services rendered, including a list of materials, and the cost thereof to the Defendants, the amount charged for labor, and the identity of the individual performing the service?
[3] We note that the correctness of the jury's decision regarding whether Ward violated the OCSPA is a different question which we address in our discussion of the Geigers' sixth assignment of error.