OPINION
{¶ 1} Alegre, Inc. appeals from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment to FCMP and its subsidiary, FCMP, Inc. (collectively, "FCMP"), on their claim on an account.
 {¶ 2} The following facts are undisputed.
 {¶ 3} In 2002, FCMP began to supply parts for use by Delphi Chassis Systems ("Delphi") in Dayton, Ohio. Pursuant to an ongoing account, FCMP provided the parts to Alegre, Inc. Alegre then supplied the parts to Plasco, Inc., in Kettering, Ohio, or to Delphi, and Alegre collected on its own account with Plasco or Delphi.
 {¶ 4} On March 25, 2005, FCMP brought suit against Alegre, alleging that it was owed $49,046.03 for parts delivered to Alegre but for which Alegre had not paid. Alegre denied the allegations. In addition, Alegre asserted a counterclaim, alleging that it had provided various services to FCMP, including attending meetings with Delphi and Plasco in support of FCMP's business. Alegre further alleged that its personnel were involved with various logistical supply issues and quality support during the startup of this arrangement. Alegre alleged that, after complaining of exchange rate and steel cost issues, FCMP began dealing directly with Plasco and Delphi. Alegre claimed that FCMP breached its agreement and caused damages in excess of $1,000,000. FCMP denied the allegations in the counterclaim.
 {¶ 5} On May 11, 2005, FCMP filed a motion for summary judgment, arguing that there were no questions of fact due to Alegre's failure to respond to its request for admissions. The court granted Alegre additional time to respond to the request for admissions, and it overruled the motion.
 {¶ 6} On September 9, 2005, FCMP again sought summary judgment. On October 19, 2005, the trial court granted FCMP's motion, finding that the evidence established that Alegre owed FCMP $49,046.03. The court noted that Alegre's counterclaim remained pending. On October 28, 2005, Alegre voluntarily dismissed its counterclaim. On January 13, 2006, the court entered a final judgment in favor of FCMP and awarded $49,046.03, plus interest, costs, and $4,094.50 in attorney fees. This appeal followed.
 {¶ 7} Alegre raises two assignments of error on appeal, which we will address together.
 {¶ 8} I. "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT BASED ON ITS FINDING THAT PLAINTIFF'S COMPLAINT WAS AN ACTION ON ACCOUNT."
 {¶ 9} II. "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT BASED ON ITS FINDING THAT NO GENUINE ISSUES OF MATERIAL FACT EXIST."
 {¶ 10} In its assignments of error, Alegre claims that there were genuine issues of material fact which precluded summary judgment in FCMP's favor.
 {¶ 11} Our review of the trial court's decision to grant summary judgment is de novo. See Helton v. Scioto Cty. Bd. of Commrs. (1997),123 Ohio App.3d 158, 162, 703 N.E.2d 841. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. See State ex rel.Grady v. State Emp. Relations Bd., 78 Ohio St.3d 181, 183, 1997- Ohio-221, 677 N.E.2d 343; Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 65-66, 375 N.E.2d 46.
 {¶ 12} FCMP supported its summary judgment motion with the affidavit of Thierry Callendrier, Chief Operating Officer of FCMP, Inc., located in Buffalo, New York. Callendrier stated that, in 2002, FCMP began to supply certain parts used in the manufacture of automobiles to Delphi. At Delphi's recommendation, FCMP sold its parts to a warehouse operated by Alegre, who in turn sold the parts to Plasco, a third party that added an additional component fixture to the parts and ultimately shipped them to Delphi. FCMP did not have a written agreement with Alegre. Instead, FCMP and Alegre operated on an account basis, with Alegre providing purchase orders to be filled by FCMP, who in turn would then invoice Alegre for the parts manufactured and provided. Around May 2004, Alegre attempted to increase its costs to Delphi, and Delphi refused to do further business with Alegre.
 {¶ 13} Callendrier indicated that Alegre had failed to pay for certain parts that were included in purchase orders 100055, 100056, 100057, and 100058. He stated that the requested parts were fabricated and that invoices were sent to Alegre for them. Authenticated copies of the purchases orders and invoices were attached to the affidavit. (We note that FCMP also sought payment for two invoices based on purchase order 100061; that purchase order was not mentioned or attached to the affidavit.) Callendrier further stated that Alegre sent debit memos #2284, #2285, #2286, #2287, and #2288, which allegedly indicated Alegre's adjustments to the amount that it owed FCMP. Although Callendrier indicated that FCMP did not dispute the debit memos for non-conforming parts (#2284) and extra sorting charges (#2285), he stated that there was no basis for the additional debit memos. (Although Callendrier indicated that these debit memos were attached and incorporated into his affidavit, the debit memos also were not attached.) He further attached a document indicating the status of the account from Alegre's perspective. This document reflected that Alegre owed FCMP $74,392.80 for the invoices at issue. By subtracting Alegre's payment of $18,353.22, $4,600.42 for non-conforming parts, and $2,393.13 for additional sorting charges, Callendrier stated that the outstanding balance was $49,046.03, the amount of the disputed debit memos.
 {¶ 14} Alegre responded with the affidavit of Ben Phillips, the account manager responsible for coordinating the activities between FCMP, Alegre, and Delphi. In his affidavit, Phillips claimed that FCMP and Alegre entered into an agreement whereby Alegre would represent FCMP in the United States, at Delphi, and at other potential accounts. He indicated that the relationship was more than an "ongoing account" and that Alegre provided FCMP with assistance in working with Delphi, program development, prototype development, warehousing, repacking, and shipping. Attached to Phillips' affidavit were numerous e-mails which allegedly supported the existence of the agreement and of the extensive relationship. Phillips indicated that, in June 2004, FCMP threatened to terminate the relationship, claiming that it could no longer live up to its pricing agreement with Delphi and that FCMP stopped shipment of parts that Alegre had ordered. Phillips stated that FCMP failed to fulfill the purchase orders at issue and that large quantities of parts from each purchase order were outstanding. The exact amounts of the outstanding quantities were set forth in the affidavit. Phillips stated that FCMP terminated its agreement with Alegre and began to sell its parts directly to Delphi or Plasco. Phillips stated that Alegre did not owe FCMP "any amount at all."
 {¶ 15} After reviewing the pleadings, admissions, and the evidence provided by the parties, the court granted summary judgment to FCMP. It reasoned:
 {¶ 16} "In the instant action, the parties did not reduce their business dealings to a written contract. Defendant admitted to receiving the parts from Plaintiff pursuant to an ongoing account, supplying these parts to a third party, and collecting on its own accounts with a third party. Plaintiff's affidavit and exhibits affirmatively demonstrate that there is no genuine issue of material fact concerning the existence of the account and the amount owed.
 {¶ 17} "While the response of Defendant tendsto establish evidence supporting its counterclaim, there is nothing which addresses Plaintiff's motion except paragraph nine of the attached affidavit, which amounts to nothing more than a simple denial without factual support. Defendant has therefore not produced evidence or set forth specific facts to show that it does not owe the amount claimed, as required to survive a motion for summary judgment, rather it has rested on the mere denial of its pleadings."
 {¶ 18} On appeal, Alegre claims that the trial court erred in construing the relationship between Alegre and FCMP as an ongoing account. It further claims that there were genuine issues of material fact as to the amount of parts at issue and the price for each part.
 {¶ 19} "An action on account is founded upon contract, and exists to avoid the multiplicity of suits that would be necessary if each transaction between the parties would be construed as constituting a separate cause of action. The cause of action exists only as to the balance that may [be] due one of the parties as a result of the parties' transactions, and not as to each item of the account. Civ.R. 10(D) requires that a copy of an account be attached to the complaint. Civ.R. 10(D) does not define what the requirements of an account are, but case law has stated that an account must contain:
 {¶ 20} "'(1) a beginning balance (zero, or a sum that can qualify as an account stated, or some other provable sum); (2) listed items, or an item, dated and identifiable by number or otherwise, representing charges, or debits, and credits; and (3) a summarization by means of a running or developing balance, or an arrangement of beginning balance and items which permits the calculation of the amount claimed to be due.' Absolute certainty of proof is not required, but there must be something upon which the court can form its judgment." (Citations omitted) Rumpke v. Acme Sheet and Roofing, Inc. (Nov. 12, 1999), Montgomery App. No. 17654; see, also, Harvest Land Co-Op, Inc. v.Wolter, Darke App. No. 1654, 2005-Ohio-6258.
 {¶ 21} Upon review of the record, we find no fault with the trial court's conclusion that there was no genuine issue of material fact that the parties had an ongoing account relationship. In its answer to FCMP's complaint, Alegre admitted that FCMP provided parts to Alegre pursuant to an ongoing account. It further admitted that Alegre thereafter supplied the parts to Plasco or Delphi and then collected on its own account with those companies. Although Phillips states in his affidavit that the relationship between Alegre and FCMP was "more than an `ongoing account,'" his statement does not create an issue of fact that the relationship involved, at least in part, the sale of FCMP's parts to Alegre and, ultimately, to Delphi, as an ongoing account. FCMP's complaint was limited to an action on account, and the trial court properly treated it as such. To the extent that Alegre claimed that FCMP breached other aspects of their alleged agreement, Alegre properly raised that issue as a counterclaim, which would have been addressed separately.
 {¶ 22} In its second assignment of error, Alegre argues that its evidence created a genuine issue of material fact as to the amount owed on the account. According to FCMP's evidence, FCMP sent invoicesepresenting the parts listed on purchase orders 100055, 100056, 100057, 100058, and 100061 for which it had not been paid. The invoices indicated the prices for each of the parts. Viewed in conjunction with Callendrier's affidavit, FCMP's evidence supported its action on account for $49,046.03.
 {¶ 23} Although not argued before the trial court, Alegre asserts on appeal that FCMP's exhibits demonstrate that there are genuine issues of material fact as to the number of parts that were sent. Alegre notes that while Callendrier's affidavit indicated that "Allegre did in fact receive all the parts identified in the purchase orders", Phillip's affidavit indicated that FCMP did not fill all of the purchase orders. Specifically, Phillips stated that the following amounts were outstanding:
PO# [Purchase Order] P/N [Part Number] Quantity Outstanding
100055 18076448 167,080
100056 18048054 55,844
100057 18048055 53,813
100058 18046761 30,763
100061 18048524 23,255
 {¶ 24} Initially, we note that FCMP has not sought payment for all of the parts listed on the purchase orders. Rather, FCMP's claim concerns the parts that they allegedly shipped to Alegre and for which Alegre had not paid, as listed on the invoices provided. In general, this amounted to a small percentage of the parts listed on the purchase order.
 {¶ 25} Upon a careful comparison of the invoices, the purchase orders, and the quantities of parts allegedly outstanding, we find no genuine issue of material fact as to the number of parts for which FCMP is owed. For example, purchase order 100056, which was revised on April 28, 2004, requested 80,534 units of part number 18048054. The revised purchase order indicated that Alegre had already received an invoice for 24,395 parts sent in March 2004. The two additional invoices for purchase order 100056 reflected subsequent shipments totaling 24,690 parts. As a result, 55,844 units remained outstanding, as indicated on Phillip's affidavit. Accordingly, Phillip's affidavit did not create a genuine issue of material as to the quantity of part number 18048054 that FCMP had shipped. Similarly, Phillip's statement thatthere were outstanding quantities for the other purchase orders also did not create a genuine issue of material fact as to whether FCMP shipped the quantities of parts listed on those invoices.
 {¶ 26} Alegre further contends that the evidence demonstrates a lack of agreement as to the price for the parts that were shipped. As with its argument regarding the amount of parts at issue, Alegre failed to contest the price of the parts before the trial court. We note that Phillips did not state in his affidavit that the prices listed on the invoices were incorrect.
 {¶ 27} On appeal, Alegre argues that the e-mails attached to Phillip's affidavit reflect that FCMP tried to impose a price increase for several parts due to the rise in steel prices and the exchange rate between the dollar and the euro. Although the e-mails indicate that FCMP tried to impose a price increase, the proposed prices for parts number 18048054 and 18048055, as reflected on Exhibits Q (an e-mail dated January 27, 2004) and R (an e-mail dated March 10, 2004), are higher than those charged in the invoices for those parts. Accordingly, those exhibits do not demonstrate that FCMP's invoices reflected prices that were contested by Alegre. Although the price increase for part number 18046761 on Exhibit Q is the price charged on the invoice for that part (Exhibit 14), Exhibit R reflects that Alegre agreed to that price. Although Alegre's Exhibits RR and S indicate that FCMP wished to impose additional surcharges, which Delphi had not yet agreed to, the e-mails do not demonstrate that the prices charged on the invoices were unilaterally imposed.
 {¶ 28} Alegre further argues that the prices reflected on several of the invoices are higher than the prices on the purchase orders. Although Alegre argues that FCMP submitted no evidence to establish that Alegre agreed to the price increase, FCMP submitted Exhibit 18, a table which FCMP indicated was prepared by Alegre, which reflected the status of the account as of September 1, 2004. The table lists the invoices at issue and reflects that Alegre owed FCMP the amount stated on the invoices. This table thus demonstrates that Alegre agreed that it owed FCMP for the parts alleged by FCMP at the prices indicated on the invoices. Alegre has presented no evidence to suggest that it did not create the table or that it disputed the information contained in the table.
 {¶ 29} Finally, although the table lists several debit memos and reflects that Alegre believed that it was entitled to credits for shipped but uncollected parts, travel and business expenses, and billable man hours, FCMP has provided evidence that Alegre was not entitled to those credits as part of its ongoing account relationship, and Alegre has provided no evidence to dispute those assertions. Rather, Alegre has merely stated that it does not owe FCMP any amount.
 {¶ 30} Viewing the evidence in the light most favorable to Alegre, we find no genuine issues of material fact that FCMP was entitled to payment on its account in the amount of $49,046.03. Accordingly, the trial court properly granted summary judgment to FCMP in that amount.
 {¶ 31} The assignments of error are overruled.
 {¶ 32} The judgment of the trial court will be affirmed.
FAIN, J. and GRADY, J., concur.