**SAMBO'S OF OHIO, INC. and Sambo's Restaurants, Inc.**

v.

**CITY COUNCIL OF CITY OF TOLEDO and City of Toledo and Swartout, Robert Adm. of City of Toledo Sign Code.**

Civ. No. C 78–614.

United States District Court,
N. D. Ohio, W. D.

Feb. 1, 1979.

**178**

Theodore M. Rowen, James P. Triona, Toledo, Ohio, Amy R. Goldson, Smothers & Douple, Washington, D. C., for plaintiff.

John J. Burkhart, Acting Dir. of Law, Toledo, Ohio, for defendants.

## OPINION AND ORDER

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

DON J. YOUNG, District Judge:

This is an action for declaratory and injunctive relief, claiming a deprivation of First Amendment rights under color of state law, and also an interference with rights under the Lanham Act.

The plaintiff Sambo's Restaurants, Inc. is a California corporation engaged in the family restaurant business. It operates over a thousand restaurants throughout the country. The plaintiff Sambo's of Ohio, Inc. is a wholly-owned subsidiary of Sambo's Restaurants, Inc. and operates thirty or more restaurants in Ohio. For convenience, throughout this opinion these corporations will be referred to as the plaintiffs.

The defendant The City Council of the City of Toledo is the legislative branch of the defendant, the City of Toledo (hereafter referred to as the City), which is a municipal corporation duly organized and existing under the Constitution and laws of the State of Ohio. It is doubtful whether the defendant City Council has any independent existence as a legal entity capable of being sued. Certainly this Court has no power to order it to take or refrain from taking any action within its powers. *Skilken v. City of Toledo*, 528 F.2d 867 (6th Cir. 1975). The defendant Robert Swartout, hereafter referred to as Swartout, is the Chief Sign Inspector of the City, a minor administrative functionary.

This action was commenced December 18, 1978. A temporary restraining order was issued, restraining the defendants and all persons acting in concert with them from revoking sign permits issued on October 13, 1978 for plaintiffs' projected restaurant on Monroe Street in Toledo. The matter was set for hearing on a motion for a preliminary injunction on December 27, 1978. By stipulation the matter was continued for hearing on the merits on January 29, 1979, and the temporary restraining order was to continue in effect until the matter was heard and determined.

The case was heard on January 29, 1979. Testimony, exhibits, and stipulations were received, the case was argued orally, and submitted. This opinion will serve as the Court's findings of fact and conclusions of law.

The evidence established that the plaintiffs are expanding their business in the State of Ohio, and propose to open three restaurants in Toledo, one on Monroe Street, one on Jackman Road, and one at the Southland Shopping Center on Glendale Avenue. On October 13, 1978, Swartout issued permits for signs to be erected on the Monroe Street premises. The applications were filed by one Howard F. Williams, the General Manager of Mercury Sign Corporation, a company engaged in erecting signs. The applications were filed and the permits issued in the routine manner.

In order to operate the restaurant on Glendale Avenue, a minor zoning change

was required. Plaintiffs made application to the Planning Commission to amend the C–4 shopping center plan granted by Ordinance 201–61 to the Southland Shopping Center. On October 19, 1978, the Planning Commission considered Resolution 231–78 submitted by the plaintiffs to effect this change, but deferred action because the Toledo Chapter of the National Association of the Advancement of Colored People (hereafter NAACP) objected to the name Sambo's.

The name Sambo's has been registered with the United States Patent Office in various forms as trademarks and service marks over a period of some years, pursuant to 15 U.S.C. § 1051.

On November 2, the Planning Commission staff recommended the approval of plaintiffs' resolution. On November 10, 1978, the Planning Commission again considered the resolution and recommended that it be approved. On November 15, 1978, the resolution came before the City Council for hearing. At the hearing the NAACP objected, and demanded that the plaintiffs not be permitted to use the name "Sambo's" on any restaurant in Toledo. Thereafter, on November 21, the City Council adopted Ordinance No. 798–78, approving the amendment to the C–4 shopping center plan. The ordinance permitted the construction of a restaurant in the Southland Shopping Center on Glendale Avenue, subject to certain conditions. Condition 9 forbade the use of the name "Sambo's" on the Glendale site.

Thereafter, Swartout, acting upon orders of his superior, H. Walter Bittner, the Chief Administrator of the City's Division of Inspection, revoked the sign permits issued on October 13, 1978 for the Monroe Street site, and denied permits to erect signs at the Jackman Road site.

The evidence showed that the Monroe Street site was leased by plaintiffs as of February 1, 1978 for a term of 25 years at a basic rental of $5,901.83 per month. The Jackman Road site was leased by the plaintiffs as of July 9, 1978 for a term of 25 years at a basic rental of $4,427.08 per

month. The Glendale Avenue site was leased by the plaintiffs as of July 18, 1978 for a term of 25 years at a basic rental of $4,843.75 per month. If the plaintiffs defaulted on any of the leases, liquidated damages are provided for in an amount equal to the difference between the rents provided in the lease and the net amount of any rents collected by the lessor upon re-letting the property to someone else.

The evidence showed that the plaintiffs had spent over the years in excess of fifty million dollars in advertising and developing the trade name of Sambo's; that their advertising budget for the 1978–1979 fiscal years is six million dollars; and that if they were required to change their advertising in the Toledo area to delete the trade name, the annual cost would be approximately sixty-three thousand dollars. It will cost, on the average, two hundred thousand dollars to equip each of the Toledo restaurants. Substantially all of the equipment will be shipped in from outside the state. At least half of the food and supplies used in the operation of the restaurants will also be shipped in from outside the state.

It is clear that the defendants' actions in undertaking to prevent the plaintiffs from the use of their trade name "Sambo's" is an unconstitutional deprivation of the First Amendment right of free speech.

Communication by signs and posters is a pure matter of speech. *Baldwin v. Redwood City,* 540 F.2d 1360 (9th Cir. 1976). Even though it is commercial advertising, it is still constitutionally protected. *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975); *Virginia State Board of Pharmacy v. Virginia Consumer Council, Inc.,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed. 707, *reh. denied,* 438 U.S. 907, 98 S.Ct. 3126, 57 L.Ed.2d 1150 (1978), and numerous other decisions. It is clear that the circumstances of the present case do not bring it within those exceptions to the First Amendment guarantees such as "fighting words," fraudulent or deceptive statements, obscenity, matters relating to juveniles, captive audiences, or infringing rights of privacy.

To uphold the actions of the defendants in this case would strike a mortal blow at the advertising business. However much one may dislike or disapprove of most commercial advertising, there is no gainsaying that it has always served a useful purpose in helping buyers to make better selections among competitors for their business. One of the basic premises of advertising is that if it is too offensive to too many people, its use will be counterproductive, for those who are offended will not only refuse to buy the product, but also, if they are sufficiently offended, they will attempt to persuade others to refuse also.

Clearly that route is open to the defendants and to the members and the supporters of the NAACP. If they are offended by the word "Sambo's" not only can they refuse to patronize the plaintiffs, but they, too, can erect signs, carry placards, or publish advertisements designed to persuade others to refuse to patronize the plaintiffs. That is what freedom of speech is all about. One cannot have freedom of speech for himself if it can be denied to others, nor is speech free if only innocuous utterances are permitted. Voltaire said "I disapprove of what you say, but I will defend to the death your right to say it." The defendants paraphrase this a bit, to say, "We disapprove of what you say, and we will destroy or banish or gag you if you say it." Perhaps in this they were relying on the fact that Voltaire died at age eighty-four of natural causes. The same cannot be said of those patriots who laid the foundations for the Constitution and the Bill of Rights. It would be selling our birthright for a mess of pottage to hold that because language is offensive and distasteful even to a majority of the public, a legislative body may forbid its use.

There is other reason why the plaintiffs must prevail in this action. The defendants in effect are forbidding the plaintiffs to use registered trademarks which have acquired the rights and protections afforded by the federal law.

The Constitution, Article I, Sec. VIII, gives to the Congress the exclusive right to issue patents and copyrights. Statutes enacted under this provision are the supreme laws of the land, and cannot be interfered with by the States or their agencies. While the Council of the City of Toledo is, within its sphere, equal to the Congress of the United States, the Council has no power either to grant or to revoke patents or copyrights, as it has in effect done by Ordinance 798–78. In a conflict between the federal law and the city ordinance, the former must prevail.

The plaintiffs have registered the name "Sambo's" pursuant to 15 U.S.C. § 1051. While § 1052 forbids registration of a trade name which:

. . . may disparage . . . institutions, beliefs, or national symbols, or bring them into contempt or disrepute,

the exclusive remedy for preventing the use of such trade names is under the provisions of § 1064, which provides a method for cancelling a registration which has been made "contrary to law." The defendants may not take the law into their own hands, and deprive the plaintiffs of their rights under the federal law by legislative or administrative actions such as have been taken here. If the defendants or the NAACP wish to deprive the plaintiffs of their rights under their registration, their remedies lie in the Patent Office. This Court has jurisdiction to, is obligated to, protect the rights which that law gives to the plaintiffs against attacks by public or private bodies, or private individuals.

The defendants have suggested that for three reasons the plaintiffs are not entitled to the relief sought in this action:

(1) they have failed to exhaust administrative remedies;

(2) there is no proof of any damages; and

(3) plaintiffs have an adequate remedy at law in an action for damages.

Obviously, of course, none of these matters are any defense to the plaintiffs' claims for declaratory relief. However, they are insufficient to overcome plaintiffs' action for injunctive relief.

As to the matter of failure to exhaust administrative remedies, the law is clear that in an action under § 1983 alleging the deprivation of federally protected rights under color of State law, the plaintiffs are not required to exhaust state remedies. *Damico v. California*, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); *McNeese v. Board of Ed.*, 373 U.S. 668, 82 S.Ct. 1433, 10 L.Ed.2d 622 (1963).

Here the basic right asserted by the plaintiffs is the First Amendment right of free speech. Only if it be granted that this right is involved only in the revocation or denial of sign permits does defendants' argument that plaintiffs could have appealed from Swartout's actions have even an appearance of substance. The plaintiffs' claims involve far more than the right to erect signs. The City has denied them the right to advertise in the newspapers or on the air, or even to put a placard inside the windows of their restaurants. The administrative remedy claimed by the defendants does not touch these matters, even if plaintiffs were required to exhaust it.

As to the alleged failure to prove damages, even if the record made no such proof, this is not an action for damages. As a matter of fact, the record not only shows evidence of damages, but establishes beyond question that the real damages suffered by the plaintiffs are irreparable.

The record shows that it would cost the plaintiffs sixty-three thousand dollars a year to delete reference to their trade and service marks from their advertising in Toledo. The uncontroverted evidence of the plaintiffs is that they have tried to operate under other trade names, such as "Jolly Tiger," but that such operations have been less profitable than their regular operations.

More importantly, the mere showing of a deprivation of First Amendment or other federally protected rights in and of itself establishes both injury and damage. *Basista v. Weir*, 340 F.2d 74 (3rd Cir. 1965).

Defendants' claim that plaintiffs have an adequate remedy at law in an action for damages again fails completely as a defense to the plaintiffs' claims for declaratory relief. Nor does it prevail against the claims for injunctive relief, for under the circumstances of this case, plaintiffs' rights to recover substantial damages, except possibly punitive damages, are very doubtful.

In this case the plaintiffs are undertaking to launch a new business enterprise, the operation of three restaurants in the City of Toledo. The law is well established that loss of profits from a new business enterprise is too speculative to be allowed as an element of damage. Only where the evidence establishes a history of profitable operations, followed by the actionable wrong and a diminution of profits, can there be any recovery. *McBrayer v. Teckla, Inc.*, 496 F.2d 122 (5th Cir.), *reh. denied*, 502 F.2d 1167 (5th Cir. 1974); *Riverside Coal Co. v. United Mine Workers of America*, 410 F.2d 267 (6th Cir.), *cert. denied* 396 U.S. 846, 90 S.Ct. 89, 24 L.Ed.2d 95 (1969); *Putnam v. Lower*, 236 F.2d 561 (9th Cir. 1956).

The loss the plaintiffs suffer here is an irreparable and incalculable one, for it is the loss of the right to open a new business and strive to make it successful. Our American free enterprise system is in grave peril if that right cannot be protected without proof that the business would be profitable. Freedom requires as much protection for the right to try and fail as for the right to try and succeed. It is the plaintiffs' right to try that is imperiled here. There is no adequate remedy at law for the loss of that right.

THEREFORE, for the reasons stated, good cause appearing, it is

ORDERED AND DECLARED that the defendant City of Toledo and its Council are without authority or power under the Constitution and laws of the United States to deny plaintiffs the use of the word "Sambo's" as a trademark, trade name, service mark, or otherwise; and it is

FURTHER ORDERED AND DECLARED that condition nine of Ordinance No. 798–78 is null, void, and of no effect; and it is

FURTHER ORDERED AND DE-CLARED that the five sign permits issued to the plaintiffs for the erection of signs upon their leased premises on Monroe Street have been unlawfully revoked, and that they are and at all times hereafter shall be in full force and effect; and it is

FURTHER ORDERED, ADJUDGED, AND DECREED that the defendants, their agents, servants, and employees, and all persons acting in concert with them or any of them, be, and they hereby are, FOREVER ENJOINED from denying plaintiffs, their agents, servants, employees, successors, or assigns the use of their trademarks, service marks, or the trade name "Sambo's" anywhere in the City of Toledo or its environs; and it is

FURTHER ORDERED that the defendants, their agents, servants and employees, and all persons acting in concert with them or any of them be, and they hereby are, FOREVER ENJOINED from denying plaintiffs, their agents, servants, or employees sign permits, and from revoking any sign permits heretofore issued, for signs embodying or utilizing the trademark, trade name, or service mark "Sambo's" so long as the proposed signs or the erection thereof are in conformity with the zoning regulations and sign code of the City of Toledo and its municipal code; and it is

FURTHER ORDERED that the plaintiffs recover their costs herein expended, including a reasonable amount for their attorneys fees and expenses in the prosecution of this action; and it is

FURTHER ORDERED that this cause be continued for further hearing as to the amount of the judgment for attorneys fees and expenses only, in the event that the parties are unable to reach an agreement as to the amount thereof within a reasonable time. Counsel shall inform the Court promptly if an agreement cannot be reached as to this matter.

IT IS SO ORDERED.