OPINION
{¶ 1} Harvest Land Co-Op, Inc. ("Harvest") appeals from a judgment of the Darke County Court of Common Pleas, which refused to award damages on its claims of payment owed on account, oral contract, and unjust enrichment.
 {¶ 2} On August 27, 2003, Harvest filed a complaint against Eldon Wolter and Wolter Farms (hereinafter collectively referred to as "Wolter") seeking $91,947.38 that was allegedly owed for purchases related to the running of a farm, including agricultural supplies and fuel. Wolter had had a running account with Harvest for many years and, according to Harvest's records, $91,947.38 represented the outstanding balance on the account. In response to Harvest's complaint, Wolter filed a counterclaim for $12,263.96 for overpayment on the account.
 {¶ 3} The parties' claims were tried to the court on December 14, 2004. At trial, both parties offered testimony and exhibits aimed at proving their claims and refuting the calculations offered by the other in support of its claim. The trial court found the evidence offered by the parties "unworthy of reliance" and concluded that it could not "logically or legally decide which party prevailed" based on the evidence presented. As such, the court declined to enter judgment in favor of either party.
 {¶ 4} Harvest appeals from the judgment of the trial court, raising two assignments of error. Wolter did not appeal. We address Harvest's assignments of error together.
 {¶ 5} I. "THE TRIAL COURT ERRED IN ADMITTING INADMISSIBLE EVIDENCE."
 {¶ 6} II. "THE TRIAL COURT ERRED IN GRANTING JUDGMENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 7} Harvest claims that the trial court erred in finding that the computerized records it offered as proof of Wolter's account status, coupled with oral testimony about those accounts, was insufficient to award judgment in its favor. Harvest claims that, even if Wolter's evidence about inaccuracies in the account were accepted as "absolute truth," a substantial balance would still have been owed on the account. Harvest also contends that the trial court erred in admitting and considering several exhibits offered by Wolter. Harvest claims that these exhibits contained hearsay, did not fall within the business records exception, and contained conjecture. Harvest further argues that these "summaries" prepared by Wolter did not comply with Evid.R. 1006.
 {¶ 8} Harvest offered the testimony of three of its employees, including its credit manager. These men testified that Harvest had merged with Darke Landmark in the early 1990s, that there had been no dispute about the Wolter account at that time, and that accounting procedures had not changed significantly as a result of the merger. Pre-merger records were unavailable, and some types of records predating 1996, when Harvest changed its computer system, were also unavailable.
 {¶ 9} According to the credit manager, the trouble on the Wolter account began in 1996, and after that time it was never paid down to a zero balance. He also testified, however, that this was not uncommon. An annual finance charge of twenty-one percent applied, as indicated on the statements, but Harvest employees could not attest to whether this charge had ever been discussed with Wolter. This charge was the same as what Darke Landmark had charged on its accounts. When questioned about the particulars of Wolter's account, Harvest's credit manager acknowledged that, at times, the agricultural supplies purchased for the farming of a particular tract of land are split, for billing purposes, between the owner of the land and the person farming the land, and that Wolter sometimes had charges of this nature on his account. The credit manager could not identify this type of purchase from the accounting records offered into evidence, explaining that such a split in billing would occur at the branch level. The credit manager also explained that the payments made by Wolter did not correspond to particular invoices sent by Harvest because payments were simply applied to the account, which had a running balance. The credit manager attributed some especially large finance charges against Wolter's account to special financing offers, particularly the expiration of deferred payment offers. However, the court was not provided with information that would have allowed it to decipher such record-keeping explanations on its own.
 {¶ 10} Wolter testified that he did not get monthly statements on his account or statements that showed a running balance like the ones offered into evidence by Harvest, despite requesting such documents. Based on documents provided by Harvest during discovery, Wolter created his own spreadsheet related to the items on his accounts. He testified that he found items that were double-billed, items that he had not purchased, payments that were not reflected, and other errors on Harvest's report, providing some examples. He also claimed that he had often had to have bills corrected after he received them.
 {¶ 11} In its judgment entry, the trial court relied on Rumpke v. AcmeSheet and Roofing, Inc. (Nov. 12, 1999), Montgomery App. No. 17654, in which we stated:
 {¶ 12} "An action on account is founded upon contract, and exists to avoid the multiplicity of suits that would be necessary if each transaction between the parties would be construed as constituting a separate cause of action. Am. Sec. Serv. v. Baumann (1972),32 Ohio App.2d 237, 242, 289 N.E.2d 373. The cause of action exists only as to the balance that may [be] due one of the parties as a result of the parties' transactions, and not as to each item of the account. Id. Civ.R. 10(D) requires that a copy of an account be attached to the complaint. Civ.R. 10(D) does not define what the requirements of an account are, but case law has stated that an account must contain:
 {¶ 13} `(1) a beginning balance (zero, or a sum that can qualify as an account stated, or some other provable sum); (2) listed items, or an item, dated and identifiable by number or otherwise, representing charges, or debits, and credits; and (3) a summarization by means of a running or developing balance, or an arrangement of beginning balance and items which permits the calculation of the amount claimed to be due.' [Citation omitted.] Absolute certainty of proof is not required, but there must be something upon which the court can form its judgment.Gabrielle v. Reagan (1988), 57 Ohio App.3d 84, 87, 566 N.E.2d 684."
 {¶ 14} Applying Rumpke, the trial court stated that it was limiting Harvest's action on account to purchases occurring on or after March 12, 1998. Specifically, it found that the amounts sought related to transactions prior to March 12, 1998, could not be calculated from a firm beginning balance because of the merger and the change in Harvest's accounting system.
 {¶ 15} The court also found that "the evidence and testimony regarding purchases and payments after March 12, 1998 [was] problematic" because of discrepancies in the records and the testimony about whether the charges should have been fully charged to Wolter and whether payments had been properly applied to the account. The court noted that the passage of time since these transactions had resulted in lapses of memory and unreliability of the evidence. Accordingly, the court concluded that it could not "logically or legally decide" that either party had proved its case by a preponderance of the evidence.
 {¶ 16} After a thorough review of the record, we agree with the trial court's assessment of the evidence. The evidence did not permit a reliable determination that Wolter owed Harvest on its account or, if so, what amount was owed. In particular, the exhibits do not lend themselves to finding a reliable beginning balance on the account, which is one of the requirements of Rumpke, supra. Legitimate questions were also raised about whether the account statement properly reflected purchases that were to be split with another customer. These shortcomings in the evidence supported the trial court's conclusion that the evidence simply was not sufficiently reliable to enter judgment for Harvest.
 {¶ 17} Harvest also objects to the trial court's consideration of documents offered by Wolter containing his own analysis or summary of the Harvest billings and allegedly interjecting some of his own information. Harvest objected to the use of these documents throughout the trial. In permitting the use of these documents during examination of the witnesses, it was clear that the trial court recognized their shortcomings and viewed them with a consciousness of the fact that some of the information was in dispute. In light of the trial court's awareness of the dispute over these documents and the court's ultimate determination that the evidence offered by each party lacked the reliability to form the basis of a judgment, we conclude that Harvest was not prejudiced by the admission of these exhibits, even if their admission might have been error.
 {¶ 18} The assignments of error are overruled.
 {¶ 19} The judgment of the trial court will be affirmed.
Fain, J. and Young, J., concur.
(Hon. Frederick N. Young retired from the Second District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).