OPINION *Page 2 
{¶ 1} This case concerns an appeal, filed by The Delaware Gazette Company, Inc. and Brown Publishing Company, and a cross-appeal filed by *Page 3 
Premier Printing of Central Ohio, Ltd. The judgment appealed followed a bench trial to the Union County Common Pleas Court.[1]
 PARTIES TO THE CASE {¶ 2} The Delaware Gazette Company, Inc. (individually referred to as "Delaware") is a defendant/counterclaim plaintiff/appellant/cross-appellee, and Brown Publishing Company (individually referred to as "Brown") is a defendant/appellant/cross-appellee. In the interest of efficiency and where practical, they will be collectively referred to as the "defendants."
 {¶ 3} Premier Printing of Central Ohio, Ltd. is the plaintiff/counterclaim defendant/appellee/cross-appellant and will be referred to herein as "Premier." Also involved at the trial level, but not on appeal, are three plaintiffs/appellees/cross-appellees, The Marysville Newspapers, Inc. (individually referred to as "Marysville"), Hubbard Publishing Company (individually referred to as "Hubbard"), and Hardin County Publishing, Inc. (individually referred to as "Hardin"). These three parties will be collectively referred to as the "plaintiffs" where practical.
 STATEMENT OF FACT {¶ 4} In March 1998, the plaintiffs and Delaware agreed to fund and operate a common printing plant, which resulted in the formation of Premier. *Page 4 
Pursuant to the operating agreement, each member owned a 25% interest in Premier, and each member was required to use Premier to print their daily newspapers and "special tabs." Examples of "special tabs" include a bridal showcase or a publication for the county fair. However, the members were not required to print their inserts at Premier. An example of an "insert" is an advertising circular, such as those printed for Kroger's or The Home Depot.
 {¶ 5} In February 2003, Premier found itself in a financially precarious situation, so the members considered and adopted the following resolution:
 BE IT RESOLVED, that each of the four (4) Members of the company advance to Premier Printing from borrowing against property, investments, or any other source, the sum of Fifty Thousand ($50,000) Dollars for a term of ninety (90) days to be repayable following such term of ninety (90) days by application thereof to printing bills incurred subsequent to May 6, 2003, without interest, and that no portion of said Fifty Thousand ($50,000) Dollars shall be applicable to present obligations of Member companies for printing services provided by Premier Printing for them prior to May 6, 2003. The entire Two Hundred Thousand ($200,000) Dollars thus raise[d] shall be applied forthwith to the outstanding obligation to P.A.G.E., and prior to that company's board meeting on February 14, 2003.
Each member contributed $50,000 to Premier as agreed.
 {¶ 6} In June 2004, Brown purchased 100% of Delaware's stock. As it relates to the sale of a member, Premier's operating agreement states:
 Should the assets for controlling interest in any Member be sold as in Section 3.13 provided, the purchaser of the assets or equity shall, if required by the majority vote of the remaining *Page 5 
 Members, continue to have such Member's newspaper or newspapers (as theretofore have been printed) printed by [Premier], still at the preferred rate, for up to three (3) years after sale except that, at any time after the first anniversary of such sale such Members may opt out of such commitment to print at [Premier] upon ninety (90) days written notice to [Premier], said notice to contain an offer for thirty days (30) days that such Member's membership in [Premier] may be redeemed at a redemption price as described in Section 3.12 of the Operating Agreement.
After the sale, each member continued to print its newspapers at Premier, and although the other members paid their printing bills each week, the defendants continuously paid their printing bills bi-weekly.
 {¶ 7} Shortly after the sale, Brown began to question some of Premier's practices, particularly after several errors were found in Defendants' newspapers. In October 2004, Brown offered to take control of Premier's operations. Brown offered to do so to help alleviate Premier's high prices, their indebtedness, and the number of mistakes being made. However, the plaintiffs did not wish to relinquish their rights as members, and Brown's offer was rejected.
 {¶ 8} On February 22, 2005, April 19, 2005, and July 20, 2005, the defendants sent correspondence to Premier indicating their intent to cease printing The Delaware Gazette and The Sunbury Times with Premier if changes were not made to better Premier's services. Matters came to a head between the parties in August 2005. On August 2, 2005, the defendants indicated to Premier that they intended to discontinue printing on August 15. On August 2, Premier sent an e- *Page 6 
mail to defendants' attorney, Joel Dempsey, asking how they intended to handle their outstanding printing bills. Receiving no response, Premier notified the defendants that their bill had to be paid in full or Premier would no longer provide services. The evidence is undisputed that this action was not properly authorized by the members. Dempsey responded to Premier's new payment plan, indicating that the defendants would begin printing elsewhere effective August 5. Since that date, defendants have had no services provided by Premier, although Brown maintains its status as a member.
 STATEMENT OF THE CASE {¶ 9} On August 3, 2005, the plaintiffs (Marysville, Hubbard, and Hardin) filed a complaint against Delaware and Brown in the Union County Common Pleas Court. The complaint stated two claims, breach of contract and tortious interference with a contract, and requested damages in excess of $250,000.
 {¶ 10} On August 25, 2005, the plaintiffs filed an amended complaint, renewing their claim for breach of contract, withdrawing their tortious interference claim, and asserting a claim to recover damages in the amount of $38,531.74, plus interest, for the defendants' unpaid printing bills.
 {¶ 11} On September 28, 2005, the defendants filed a motion to dismiss pursuant to Civ.R. 12(B)(6). In the attached memorandum, they argued that the plaintiffs were not real parties in interest and that the complaint did not meet the *Page 7 
requirements of a derivative action. The plaintiffs filed a memorandum in opposition, and on October 11, 2005, they sought leave to file a second amended complaint, which added Premier as a plaintiff and asserted the same claims as those set forth in the first amended complaint. The court granted leave to file the second amended complaint on October 13, 2005.
 {¶ 12} On November 14, 2005, the defendants filed a second motion to dismiss under Civ.R. 12(B)(6), arguing that Marysville, Hubbard, and Hardin were not proper plaintiffs and that Premier should be dismissed because neither its board members nor managers authorized the filing of a lawsuit. The trial court denied the motion on November 16, 2005. Thereafter, Delaware and Brown jointly filed an answer, and Delaware filed a counterclaim against Premier. In its counterclaim, Delaware asserted two claims for breach of contract, one claim for promissory estoppel, one claim for restitution, and one claim for unjust enrichment. Premier timely filed an answer to the counterclaim.
 {¶ 13} On March 14, 2006, the defendants filed a joint motion for summary judgment with supporting affidavits. They also filed the depositions of Jeffrey Barnes, Jon Hubbard, and Michael Gurr. The plaintiffs and Premier jointly filed a memorandum in opposition, and the defendants filed a reply. On April 3, 2006, the trial court denied summary judgment, finding genuine issues of material fact. *Page 8 
 {¶ 14} As the trial date approached, the plaintiffs and Premier jointly filed a pre-trial brief, and the defendants jointly filed a pre-trial brief. On April 19, 2006, following a pre-trial conference, the court filed a journal entry indicating in pertinent part that "Plaintiffs' Exhibits 1 through 27 are stipulated into evidence, excepting exhibit (9)."
 {¶ 15} The court held a bench trial on April 26, 27, and 28, 2006. After Plaintiffs and Premier rested, the defendants moved for dismissal under Civ.R. 41(B)(2), which the trial court denied. Defendants renewed their motion at the conclusion of their case, and the trial court again denied it. Prior to ruling, the court allowed the parties additional time to brief the issue of lost profits on Plaintiffs' and Premier's breach of contract claim.
 {¶ 16} On June 30, 2006, the trial court filed its judgment entry. The court found that Marysville, Hubbard, and Hardin were not proper plaintiffs since they were shareholders in Premier. Although the court found that the defendants had not given proper notice of their intent to cease printing at Premier, the court denied Premier's request for lost profits, finding that the evidence was speculative. As to Premier's claim on account, the court awarded judgment in the amount of $38,531.74, plus interest. The court denied a "set-off to Defendants, finding that Delaware was still a member of Premier. The court implied that Delaware could recover its $50,000 by receiving printing services from Premier as specified in the *Page 9 
parties' 2003 resolution. Although the court stated that Delaware was not entitled to a "set-off," the court apparently considered the evidence in light of Delaware's counterclaim, as the court concluded that "Delaware receives nothing as a result of its Counter-Claim * * * ."
 {¶ 17} On July 14, 2006, Premier filed a motion for new trial pursuant to Civ.R. 59(A)(7) and (9), which the trial court overruled. On July 31, 2006, Delaware and Brown filed a joint notice of appeal, asserting six assignments of error for our review.
 First Assignment of Error The trial court erred in denying the Appellants/Cross-Appellees a $50,000.00 setoff against Premier Printing of Central Ohio, Ltd. for monies advanced in February of 2003.
 Second Assignment of Error The trial court erred in denying the Motion for Summary Judgment of the Appellants/Cross-Appellees with respect to the $50,000.00 setoff against Premier Printing of Central Ohio, Ltd. for monies advanced in February of 2003.
 Third Assignment of Error The trial court erred in denying the Motion to Dismiss of the Appellants/Cross-Appellees pursuant to Ohio Rule of Civil Procedure 41(B)(2) during the trial with respect to the $50,000.00 setoff.
 Fourth Assignment of Error The trial court erred in granting judgment in favor of Premier Printing of Central Ohio, Ltd. for past printing services in the *Page 10 
 sum of $38,531.74 with interest from August 1, 2005 at the rate of 10% per year.
 Fifth Assignment of Error The trial court erred in denying the Motion for Summary Judgment of the Appellants/Cross-Appellees with respect to the claim of Premier Printing of Central Ohio, Ltd. for past printing services of $38,531.74 plus interest.
 Sixth Assignment of Error The trial court erred in denying the Motion to Dismiss of the Appellants/Cross-Appellees pursuant to Ohio Rule of Civil Procedure 41(B)(2) during the trial with respect to the claim of Premier Printing of Central Ohio, Ltd. for past printing services of $38,531.74 plus interest.
On August 9, 2006, Premier filed a cross-appeal, asserting two assignments of error. First Cross-Assignment of Error The trial court erred by failing to award lost profits to Premier on its breach of contract action.
 Second Cross-Assignment of Error The trial court erred by denying Premier Printing's motion for a new trial.
 {¶ 18} For ease of analysis, we elect to address the assignments of error out of order.
 ANALYSIS Issues Presented by the Second and Fifth Assignments of Error *Page 11 
 {¶ 19} In the second and fifth assignments of error, Defendants contend they were entitled to summary judgment against Premier. In the second assignment of error, Defendants contend that the trial court erred by denying summary judgment on Premier's claim for unpaid printing bills. To support their assignment of error, Defendants contend that the trial court should have granted either their claim for restitution or their claim for unjust enrichment, and that the court should have off set that amount against their unpaid printing bills. Although Defendants challenge a denial of summary judgment, their appellate brief cites us to the testimony and exhibits produced at trial.
 {¶ 20} An appellant's brief must contain a "statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected." App.R. 16(A)(4). An appellant is also required to include in its brief an argument to each assignment of error "with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(7). This Court's local rules provide further guidance as to the appellant's brief. Loc.R. 7(A) states that an appellant's brief is to contain all of the information found in App.R. 16(A), and Loc.R. (11)(A) states, "[e]ach assignment of error must be separately argued in the briefs unless the same argument, and no other, pertains to more than one assignment of error." (Emphasis added.). *Page 12 
 {¶ 21} Defendants' brief is submitted in contravention of these rules. The second assignment of error references the trial court's orders on summary judgment. However, Defendants did not cite us to the trial court's judgment. More importantly, Defendants have set forth one argument to support the first, second, and third assignments of error, and that argument relates to the evidence produced at trial. App.R. 12(A)(2) allows appellate courts to "disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." Evidence adduced at trial is not the type of evidence that may not be used to support a motion for summary judgment. See Civ.R. 56. Therefore, Defendants' argument to support the second assignment of error does not meet the requirements of App.R. 16(A)(7) and Loc.R. 11(A), and we decline to scour the record to create an appellate argument on Defendants' behalf. The second assignment of error is overruled.
 {¶ 22} The fifth assignment of error challenges the trial court's denial of summary judgment on Premier's claim on account. However, Defendants have again "clustered" together their assignments of error so that the same arguments support the fourth, fifth, and sixth assignments of error despite the appellate and local rules. First, Defendants contend that Premier failed to plead properly the *Page 13 
claim on account in the second amended complaint. Second, they contend that Premier did not meet its burden of proof at trial. Finally, they contend that Plaintiffs' Exhibit 25, which the trial court relied upon in entering judgment for Premier, was inadmissible under Evid.R. 803(6). However, in the original motion for summary judgment, Defendants raised only the issue of a set-off, and they did not address any of the arguments asserted on appeal.
 {¶ 23} After reviewing the defendants' motion for summary judgment and the arguments raised in their appellate brief, it is clear that defendants are asserting on appeal new legal theories not advanced in the trial court. Ohio law is well established that arguments raised for the first time on appeal are improper. Webster v. G J Kartway, 12th Dist. No. CA2005-06-011, 2006-Ohio-881, at ¶ 25, citing 10 West, Federal Practice Procedure (1983), 651-654, Section 2716; Vaughn v. Sexton (C.A.8, 1992), 975 F.2d 498, 503; O.R.S.Distilling Co. v. Brown-Forman Corp. (C.A.8, 1992), 972 F.2d 924, 926;Topalian v. Ehrman (C.A.5, 1992), 954 F.2d 1125, 1131-1132. Accordingly, the fifth assignment of error is overruled.
 Issues Presented by the Fourth and Sixth Assignments of Error {¶ 24} In the fourth assignment of error, Defendants contend the trial court erred when it granted judgment in favor of Premier on unpaid printing bills, and in the sixth assignment of error, Defendants contend the trial court erred in denying *Page 14 
their motion to dismiss pursuant to Civ.R. 41(B)(2) on Premier's claim for unpaid printing bills. As noted above, Defendants assert the same arguments to support each of these assignments of error. Specifically, Defendants contend that Premier failed to properly plead a claim on account in their second amended complaint; that Premier did not meet its burden of proof at trial; and that Plaintiffs Exhibit 25 was inadmissible under Evid.R. 803(6).
 {¶ 25} As to Defendants' argument that Premier's claim must be dismissed as being improperly pled, the first time this argument surfaced was at the close of Premier's case in chief, as part of Defendants' Civ.R. 41(B)(2) motion for dismissal. In a case tried to the court, the defendant may move for dismissal at the close of the plaintiffs evidence "on the ground that upon the facts and the law the plaintiff has shown no right to relief." Civ.R. 41(B)(2). When such a motion is made, "[t]he court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence." Id. The trial court must "determine whether the plaintiff has made out his case by a preponderance of the evidence." Bertie v. Cashen (Oct. 16, 1981), 6th Dist. No. C.A. No. L-81-032, unreported, quotingJacobs v. Bd. of Cty. Commrs. (1971), 27 Ohio App.2d 63, 65,272 N.E.2d 635, citing U. S. v. Huck Mfg. (D.C. Mich. 1964), 227 F. Supp. 791, affirmed 382 U. S. 197, 86 S. Ct. 385, 15 L.E.2d 268; Ellis v.Carter (C.A. 9 1964), 328 F. 2d 573; *Page 15 Huber v. Am. President Lines (C.A. 2 1957), 240 F. 2d 778; S. ArizonaYork Refrig. Co. v. Bush Mfg. Co. (C.A. 9 1964), 331 F. 2d 1;McCormac, Ohio Civil Rules Practice, Section 13.08.
 {¶ 26} A trial court's decision on a question of law is reviewed de novo. Manogg v. Stickle (Dec. 29, 1999), 5th Dist. No. 99CA56, unreported. However, if the trial court was faced with a question of fact, we must determine whether its determination was against the manifest weight of the evidence. Id. "An appellate court will not reverse the decision of a trial court for being against the manifest weight of the evidence if the decision of the trial court is supported by competent, credible evidence." Id., citing C.E. Morris Co.v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 280, 376 N.E.2d 578. Whether Defendants were entitled to a dismissal under Civ.R. 41(B)(2) on Premier's claim on account is a question of law, which requires de novo review. Harbison v. Conover, 3d. Dist. No. 6-06-03, 2006-Ohio-6196, at ¶ 14, citing State v. McGhee, 3d. Dist. No. 17-06-05, 2006-Ohio-5162, at ¶ 10, citing Ohio Bell Tel. Co. v. Pub. Util. Comm. (1992),64 Ohio St.3d 145, 147, 593 N.E.2d 286, citing Consumers' Counsel v. Pub. Util.Comm. (1979), 58 Ohio St.2d 108, 110, 388 N.E.2d 1370.
 "An action on account is founded upon contract, and exists to avoid the multiplicity of suits that would be necessary if each transaction between the parties would be construed as constituting a separate cause of action. The cause of action exists only as to the balance that may [be] due one of the parties as a result of the parties' transactions, and not as to each item of *Page 16 the account. Civ.R. 10(D) requires that a copy of an account be attached to the complaint."
FCMP, Inc. v. Alegre, Inc., 2nd Dist. No. 21457,2007-Ohio-132, at ¶ 19, quoting Rumpke v. Acme Sheet and Roofing,Inc. (Nov. 12, 1999), 2nd Dist. App. No. 17654, unreported; citing, Harvest Land Co-Op, Inc. v. Wolter, 2nd Dist. No. 1654, 2005-Ohio-6258.
 "An account must show the name of the party charged and contain: (1) a beginning balance (zero, or a sum that can qualify as an account stated, or some other provable sum); (2) listed items, or an item, dated and identifiable by number or otherwise, representing charges, or debits, and credits; and (3) summarization by means of a running or developing balance, or an arrangement of beginning balance and items which permits the calculation of the amount claimed to be due."
Gabriele v. Reagan (1988), 57 Ohio App.3d 84, 87, 566 N.E.2d 684, quoting Brown v. Columbus Stamping Mfg. Co. (1967), 9 Ohio App.2d 123,223 N.E.2d 373, paragraph three of the syllabus. See also FCMP, at ¶ 20; Rumpke.
 {¶ 27} Premier attached a copy of the contract to its second amended complaint, but it failed to attach any proof of the account. However, such failure is not fatal to Premier's case because neither defendant filed a motion for a definitive statement. See Castle Hill Holdings, LLCv. Al Hut, Inc., 8th Dist. No. 86442, 2006-Ohio-1353, at ¶ 25-26, citing Schwartz v. Bank One, Portsmouth, N.A. (1992),84 Ohio App.3d 806, 812, fn. 4, 619 N.E.2d 10; Point Rental Co. v.Posani (1976), 52 Ohio App.2d 183, 368 N.E.2d 1267 ("Civ.R. 10(D) does not *Page 17 
expressly require the dismissal of a complaint which does not comply with the rule, and such defects may be cured by less drastic means. * * * Courts have repeatedly held that when a plaintiff fails to attach a copy of a written instrument to his complaint, the proper method to challenge such failure is by filing a Civ.R. 12(E) motion for a more definite statement."). Although Defendants filed a motion to dismiss under Civ.R. 12, they challenged only the plaintiffs' capacity to file the action, not the formalities of the pleading itself.
 {¶ 28} Defendants rely upon this Court's decision in Arthur v.Parentheau (1995), 102 Ohio App.3d 302, 657 N.E.2d 284, to support their contention that Premier's claim on account must be dismissed. However, Defendants' reliance is misplaced. In Arthur, the trial court considered the complaint to state a claim for breach of contract, and this Court affirmed the trial court's dismissal, holding that the plaintiff had not met its burden of proving damages. In dicta, the court stated, "We note that if appellant's complaint was intended to be an action on an account, the complaint could have been dismissed * * * ." (Emphasis added). Arthur, at 304, fn. 1. The court went on to discuss the requirements of Civ.R. 10(D) and agreed with the trial court that no account had been pled. Id., at 305. However, the court failed to consider the effects of a request for a definitive statement. Civ.R. 12(E) was in effect in 1995, and other districts had applied it in similar situations. See Schwartz, at 812; Point Rental, at 186. Therefore, Arthur is *Page 18 
distinguished from this case, and the trial court did not err in denying Defendants' Civ.R. 41(B)(2) motion. Defendants' argument is without merit.
 {¶ 29} The second argument advanced by Defendants is that Plaintiffs' Exhibit 25 was not admissible as a business record under Evid.R. 803(6) because it was not prepared in the usual course of business. In response, Premier argues that the defendants stipulated to the exhibit during a pre-trial conference, only to "renege" on that stipulation during trial. In the alternative, Premier contends that Exhibit 25 was admissible under Evid.R. 1006 as a summary of Premier's billing records. Finally, Premier contends that even if the trial court abused its discretion, the error was harmless because Defendants have admitted the amount of the unpaid bills by seeking a set-off.
 {¶ 30} Trial courts have broad discretion in determining whether to admit or exclude evidence. Ward v. Geiger, 3d. Dist. No. 14-05-14,2006-Ohio-6853, at ¶ 16, citing Rigby v. Lake Cty. (1991),58 Ohio St.3d 269, 271, 569 N.E.2d 1056. An "`abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, quoting State v.Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144, internal citations omitted. *Page 19 
 {¶ 31} On April 19, 2006, the court held a pre-trial conference with the parties and filed its judgment entry, which journalized the agreements reached by the parties during the conference. Specifically, the judgment entry stated: "Plaintiffs' Exhibits 1 through 27 are stipulated into evidence, excepting exhibit (9)." (J. Entry, Apr. 19, 2006, at ¶ 4). Trial began on April 26. Between the time of the judgment entry and trial, defense counsel did not object to the stipulation.
 {¶ 32} During trial, Premier introduced Plaintiffs' Exhibit 25 to one of its witnesses, Jennifer O'Connors. Premier questioned O'Connors about the first page of the exhibit, but then the following exchange took place:
BY MR. FERGUSON:
 Q: Turning to the second page of Exhibit 25, can you identify this page, Ms. O'Connors?
 A. Yes.
 MR. CARUSO: I'm going to object, Your Honor, on the basis that the document we stipulated to at the pretrial was simply the first page of Exhibit 25; it was not the additional invoices, the invoice history of the next two pages.
 THE COURT: So bottom line you're saying, no, it's not stipulated into evidence. You want to qualify it, that's what you're telling me?
 MR. CARUSO: I'm objecting because it was not —
 THE COURT: I say, do you want to qualify that, is that the basis of your objection?
 MR. CARUSO: In part, yes, but also — *Page 20 
 THE COURT: Okay. Not a problem. Not stipulated into evidence. Proceed.
(Trial Tr., Oct. 16, 2006, at 229). Premier continued to question O'Connors about the exhibit, and her testimony culminated in the balance owed by defendants, which was $38,531. Although O'Connors admitted to the court that Plaintiffs' Exhibit 25 was not kept in the ordinary course of business, she testified that she had been responsible for preparing the invoices and entering the payments into the computer. O'Connors testified that she had entered all of the bills and payments into her computer using QuickBooks, and that she had paper copies of the invoices.
 {¶ 33} At the close of direct examination, Premier moved to admit Exhibit 25 into evidence, stating, "[t]his was a stipulated document at the pretrial conference that we had." (Trial Tr., at 242). The court responded: "You say he doesn't have a problem with the first page, he says that's stipulated, the problem was with the other pages?" (Trial Tr., at 242). Premier's attorney stated, "Well, Your Honor, the other pages are a compilation of the extensive records that were stipulated. This is — this was a —" (Trial Tr., at 243). The court then stated, "I understand that. He doesn't understand that. Not a problem. Are you moving to admit it all?" (Trial Tr., at 243). Premier indicated that it moved to admit the entire exhibit, and the court admitted the exhibit over objection. *Page 21 
 {¶ 34} At the close of Premier's case in chief, its attorney moved to admit Plaintiffs' Exhibit 9 into evidence, which the court did over objection. Premier's attorney stated that it had no further evidence, and then said, "[Exhibit 9 was] the only exhibit that [was] not stipulated into evidence under the Court's pretrial order." (Trial Tr., at 298). Defendants did not object to this statement.
 {¶ 35} "`[A] stipulation is a voluntary agreement between opposing counsel concerning disposition of some relevant point so as to obviate the need for proof or to narrow the range of litigable issues.'"Julian v. Creekside Health Center, 7th Dist. No. 03MA21,2004-Ohio-3197, at ¶ 54; quoting DeStephen ex rel. DeStephen v. AllstateIns. Co., 10th Dist. No. 01AP-1071, 2002-Ohio-2091, at ¶ 17, quotingHomer v. Whitta (Mar. 16, 1994), 3d Dist. No. 13-93-33. "Ohio courts have long recognized the validity of stipulations." Albertso v.Ryder (Jun. 30, 1992), 11th Dist. No. 91-L-103, unreported, citing Garrett v. Hanshue (1895), 53 Ohio St. 482, 495,42 N.E.2d 256. Stipulations waive the necessity to produce evidence or the authentication of evidence. 89 Ohio Jurisprudence 3d (1989) 114, 115, Trial, Section 77. A stipulation that is filed with and accepted by the court is binding on the parties and "is a fact deemed adjudicated for purposes of determining the remaining issues in the case."Albertso, at ¶ 54, citing Whitehall ex rel. Fennessy v. Bambi Motel
(1998), 131 Ohio App.3d 734, 742, 723 N.E.2d 633. "A party who has agreed to a stipulation cannot unilaterally retract or *Page 22 
withdraw from it." Id., citing Horner. A stipulation may only be withdrawn with the other party's consent or "by leave of court upon good cause." Id., citing In re:Body (June 23, 1998), 5th Dist. No. 97CA33, unreported. In determining whether a party may withdraw a stipulation, the court has broad discretion. Id., citing Morris v. Continental Ins.Cos. (1991), 71 Ohio App.3d 581, 589, 594 N.E.2d 1106, citing Ish v.Crane (1862), 13 Ohio St. 574, 580.
 {¶ 36} Based on this record, it appears that the trial court "granted" Defendants'"request" to withdraw their stipulation as to the admissibility of Plaintiffs' Exhibit 25. However, the request was not made as to the first page. Therefore, the first page of Plaintiffs' Exhibit 25 was admitted into evidence as stipulated, and the remaining pages were admitted over Defendants' objection. Even if the court's decision to admit the entire exhibit was in error, we cannot find that it rises to an abuse of discretion. Jeffrey Barnes had previously testified that Defendants owed unpaid bills for approximately three weeks' worth of printing. (Trial Tr., at 131). He testified that for that work, Defendants owed approximately $38,500. (Trial Tr., at 84, 131). Additionally, Plaintiffs' Exhibit 22, which contained an e-mail sent from Dan Behrens to Joel Dempsey, evidenced an account balance of $36,647.50. (Trial Tr., at Pl.s' Ex. 22).
 {¶ 37} When Defendants objected to the admission of Plaintiffs' Exhibit 25, they did not state the reason for the objection, and the context for the objection is *Page 23 
not clear. The objection could have been a challenge under the business records exception to the hearsay rule, which the court alluded to during O'Connors' testimony, or it could have been a further challenge to the stipulation, which the trial court alluded to in admitting the exhibit. On this record, the court may have thought there was a problem with Evid.R. 803(6), but it could have admitted the exhibit as a summary of voluminous records under Evid.R. 1006. O'Connors' testimony indicates that the records from which the exhibit was prepared were plentiful and she had retained the records.
 {¶ 38} Under Evid.R. 103(A), the admission or exclusion of evidence is not error unless a substantial right of a party is affected. Based on the other testimony, Defendants' failure to support their bare assertion that they received only the first page of an exhibit during a pre-trial conference with the court, and Defendants' failure to object at every relevant place in the record, we cannot find that a substantial right has been affected by the admission of Exhibit 25. Accordingly, we find no abuse of discretion in the court's decision to admit into evidence Plaintiffs' Exhibit 25. Defendants' argument is without merit.
 {¶ 39} Finally, in support of the fourth and sixth assignments of error, Defendants contend that Premier failed to prove the account by a preponderance of the evidence. Defendants raised this argument to the trial court as part of their Civ.R. 41(B)(2) motion, so we may properly consider this argument in relation to *Page 24 
both the fourth and sixth assignments of error. Whether the plaintiff satisfied its burden of proof is a question of fact for the trial court, and on this record, the court's decision is supported by some competent and credible evidence. See generally Snider v. Townsend, 3d. Dist. No. 10-04-20, 2005-Ohio-5267, at ¶ 10, citing C.E. Morris, at syllabus.
 {¶ 40} In its case in chief, Premier presented testimony from Jeffrey Barnes, Dan Behrens, Jennifer O'Connors, and Steven Smith. Relevant to the claim on account, Barnes testified that Premier's members were required to use Premier for printing services and certain post-press procedures. However, several post-press procedures, such as placing advertising inserts into the newspapers, were not required under the contract, so each member could opt to perform this task at its own facility. (Trial Tr., at 150-151). Barnes also testified that at the beginning of August 2005, Defendants owed approximately $70,000 in unpaid printing bills. (Trial Tr., at 84-85, 131). Barnes testified that Defendants sent a check to Premier, which payment would have reduced their debt to approximately $38,500. (Trial Tr., at 84-85, 131).
 {¶ 41} Behrens testified that Defendants' debt was between $72,000 and $73,000. (Trial Tr., at 178). Without giving specifics, Behrens stated that Premier received a check from Defendants on or about August 3, 2005. (Trial Tr., at 204). Behrens also testified that some post-press services were required under the *Page 25 
operating agreement; however, the insertion of advertising sections was not. (Trial Tr., at 186). O'Connors' testified that Defendants owed $38,531. (Trial Tr., at 237). Additionally, Plaintiffs' Exhibit 22 evidenced an outstanding balance of $36,647.50. The witnesses also testified that Defendants sometimes printed inserts with Premier, although that service was not required under the members' operating agreement.
 {¶ 42} On this record, there is competent and credible evidence to support the trial court's finding that Premier had proven its account by a preponderance of the evidence. Although Roy Brown testified that Brown had paid Delaware's account in full, the trial court apparently gave little weight to his testimony or found him to be less credible than Premier's witnesses. We must defer to the trial court on issues of credibility. See Treasurer, Hancock County v. Ludwig, 3d. Dist. No. 5-06-26, 2006-Ohio-6486, at ¶ 21, citing State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, at paragraph one of the syllabus.
 {¶ 43} For the reasons expressed above, the fourth and sixth assignments of error are overruled.
 Issues Presented by the First and Third Assignments of Error {¶ 44} In the first assignment of error, Delaware contends that the trial court erred in denying damages for the $50,000 Delaware contributed to Premier in 2003. The third assignment of error addresses the trial court's failure to grant *Page 26 
Defendants' Civ.R. 41(B) motion in regard to the $50,000 set-off. Delaware contends it raised claims for unjust enrichment and restitution in its counterclaim, and Defendants contend that they requested a set-off as an affirmative defense. In response, Premier contends the trial court reached a correct resolution, noting that Delaware remained a member of Premier, and that it acquired neither "better nor poorer rights than the other shareholders to repayment * * * ." Premier contends that the operating agreement allows members to apply the $50,000 to future printing bills only. As such, Premier contends that Delaware cannot apply any of the $50,000 to its account because the account constitutes a past bill.
 {¶ 45} "The construction of written contracts is a matter of law, and courts will give common words in a written instrument their plain and ordinary meaning, unless an absurd result would follow or there is clear evidence of another meaning from the face or overall contents of the instrument." Cooper Tire and Rubber Co. v. Warner Mechanical Corp., 3d. Dist. No. 5-06-39, 2007-Ohio-1357, at ¶ 10, citing Alexander v. BuckeyePipe Line Co. (1978), 53 Ohio St.2d 241, 374 N.E.2d 146, paragraphs one and two of the syllabus. We must read the entire instrument to give effect to the parties' intent, and "[w]hen terms included in an existing contract are clear and unambiguous, an appellate court cannot create a new contract by finding intent not expressed in the clear and unambiguous language of the existing written contract." Id., citingStocker Sitler, Inc. v. Metzger (1969), *Page 27 19 Ohio App.2d 135, 142, 250 N.E.2d 269; quoting Hamilton Ins. Serv.,Inc. v. Nationwide Ins. Cos., 86 Ohio St.3d 270, 273, 1999-Ohio-162,714 N.E.2d 898. This case calls upon us to interpret the February 2003 resolution entered into by the members of Premier, which states:
 BE IT RESOLVED, that each of the four (4) Members of the company advance to Premier Printing from borrowing against property, investments, or any other source, the sum of Fifty Thousand ($50,000) Dollars for a term of ninety (90) days to be repayable following such term of ninety (90) days by application thereof to printing bills incurred subsequent to May 6, 2003, without interest, and that no portion of said Fifty Thousand ($50,000) Dollars shall be applicable to present obligations of Member companies for printing services provided by Premier Printing for them prior to May 6, 2003. The entire Two Hundred Thousand ($200,000) Dollars thus raise[d] shall be applied forthwith to the outstanding obligation to P.A.G.E., and prior to that company's board meeting on February 14, 2003.
Reading the entire resolution, the terms are clear that the members could not apply their $50,000 contributions to any bills incurred prior to May 6, 2003. Contrary to Premier's contentions, the resolution does not prohibit the application of the contribution to all past billsever incurred. Therefore, Delaware would be entitled to apply its contribution to any outstanding account as long as the account accrued after May 6, 2003.
 {¶ 46} Also, contrary to Premier's assertion, the resolution does not contain any specification as to how the members could request a credit against their bills. At the time of trial, none of the members had sought repayment. Until this *Page 28 
litigation ensued and Delaware sought repayment, the question of how a member was to invoke the right had not been raised. Without any contractual boundaries, Delaware was entitled to request, and receive, a credit against its unpaid printing bills, which, as the undisputed evidence shows, were accrued after May 6, 2003. Therefore, Delaware is entitled to a set-off in the amount of $38,531.74, the amount due on its account. Delaware is not entitled to judgment on its behalf for the remaining balance of its $50,000 contribution because, as the trial court noted, Delaware remains a member of Premier. Delaware has the option of receiving printing services from Premier, which is the only form of repayment authorized by the resolution to which it agreed. The first assignment of error is sustained, which renders the third assignment of error moot.
Issues Presented by the First and Second Cross-Assignments ofError
 {¶ 47} In the first cross-assignment of error, Premier contends that the trial court's denial of lost profits is against the manifest weight of the evidence because the court erred by discrediting its expert witness, Steven Smith. Premier contends that Smith valued its historical gross revenues and subtracted the "cost of goods sold," thereby calculating its lost profits. Smith calculated lost profits for the defendants' regular printing and their special printing from August 2005 through February 2006; that is, from the time Delaware ceased printing with Premier to the time of trial. *Page 29 
 {¶ 48} The defendants contend the trial court did not err. Defendants argue that Smith based his calculations on a printing rate of 35.4% even though the testimony indicated that members printed at a 20% rate; that Smith's calculations were based on invoices reflecting insert printing, even though members were not required to print inserts at Premier; and that Smith failed to change his calculations for variable expenses or cost-saving efforts instituted after August 2005. Defendants also contend that Premier could only obtain lost profits for 90 days, and that Premier improperly calculated lost profits between August 5, 2005 and August 14, 2005, a time when defendants had intended to print with Premier.
 {¶ 49} "The determination of the existence and amount of the lost profits is a question of fact." Kosier v. DeRosa, 169 Ohio App.3d 150,2006-Ohio-5114, 862 N.E.2d 159, at ¶ 33, citing Bowlander v.Bowlander (Apr. 7, 1995), 6th Dist. No. OT-93-50. Therefore, the trial court's judgment will not be disturbed if there is some competent and credible evidence on the record to support it.
 {¶ 50} A plaintiff may recover lost profits if "(1) profits were within the contemplation of the parties at the time the contract was made, (2) the loss of profits is the probable result of the breach of contract, and (3) the profits are not remote and speculative and may be shown with reasonable certainty." Charles R. Combs Trucking, Inc. v.Internat'l. Harvester Co. (1984), 12 Ohio St.3d 241, 466 N.E.2d 883, at paragraph two of the syllabus. *Page 30 
 {¶ 51} The trial court denied lost profits to Premier, finding that Smith's testimony "invites the Court to speculate as to what the lost profits, if any, are." The court noted that the testimony had proved a mark-up of 20% over cost for members, but that Smith used 35.4%, based in part on "post press services in an unknown amount for which Delaware was not under mandatory contract." The trial court's findings indicate that Premier suffered lost profits, but it had merely failed to prove the amount of damages. We agree that Premier was entitled to lost profits; however, we would limit lost profits to a 90-day time period after August 5, 2005.
 {¶ 52} Despite Defendants' assertion that they intended to print at Premier through August 14, 2005, the record indicates that Defendants actually stopped printing on August 5. The operating agreement is clear that a member who wished to stop printing services was required to give 90-days written notice. The trial court found that none of Defendants' correspondence constituted notice, and there is competent and credible evidence on the record to support such a finding. In any event, Premier had actual notice that Delaware had ceased printing on August 5, when Defendants stopped using its services. Therefore, Premier would be entitled to lost profits for a 90-day period beginning on August 5, 2005.
 {¶ 53} As to the amount of damages, the plaintiff has the duty to prove lost profits with reasonable certainty. Try Hours, Inc. v.Swartz, 6th Dist. No. L-06-1077, *Page 31 2007-Ohio-1328, at ¶ 22, citing Gahanna v. Eastgate Prop., Inc. (1988),36 Ohio St. 3d 65, 521 N.E.2d 814, syllabus. Lost profits must "`"be based upon an analysis of lost `net' profits after the deduction ofall expenses impacting on the profitability of the business in question."`" (Emphasis in original) Id., quoting Miller Med. Sales, Inc.v. Worstell (Dec. 21, 1993), 10th Dist. No. 93-AP-23, citing Justice Wright's concurrence, in part, and dissent, in part, in Digital AnalogDesign Corp. v. N. Supply Co. (1989), 44 Ohio St.3d 36, 48,540 N.E.2d 1358. "Although lost profits need not be proven with mathematical precision, they must be capable of measurement based upon known reliable factors without undue speculation." Telxon Corp. v. Smart Media ofDelaware, Inc., 9th Dist. Nos. 22098, 22099,2005-Ohio-4931, at ¶ 108, quoting McNulty v. PLS Acquisition Corp., 8th Dist. No. 79025, 2002-Ohio-7220, at ¶ 87 fn. 14; ¶ 108, fn. 19. As to a new business, and Premier had existed for only six years, the law requires the plaintiff to show a "history of profitable operations, followed by the actionable wrong and a diminution of profits" before the plaintiff can recover. Id., at ¶ 108, fn. 19, quoting Sambo's of Ohio,Inc. v. City Council of Toledo (N.D.Ohio, 1979), 466 F.Supp. 177, 181, citing McBrayer v. Teckla, Inc. (C.A.5, 1974), 496 F.2d 122.
 {¶ 54} Jeffrey Barnes testified that 2005 was the first year Premier had made a profit since it was formed, and this was so even though Delaware did not print at Premier for the entire year. Both Barnes and Dan Behrens estimated that *Page 32 
Delaware had provided monthly revenue of between $50,000 and $60,000 to Premier. (Trial Tr., at 87; 189). Both men also testified that the "preferred rate" for members constituted a 20% mark-up over costs. (Trial Tr., at 73; 190). Both men testified that the printing contract required some post-press services to be performed at Premier. Barnes went on to testify that Premier continued to have financial problems as of the time of trial, due in part to Delaware's departure, which implies that Premier has continued to lose money.
 {¶ 55} We agree with the trial court that the calculations performed by Steven Smith, Premier's financial expert, were too speculative. Smith included figures for services that were not required to be performed at Premier under the operating agreement, and the testimony was undisputed that Smith used a 35.4% mark-up rate rather than the contractual 20% mark-up rate. Smith also failed to consider Premier's variable expenses. Given this record, Premier failed to prove by a preponderance of the evidence the damages it was entitled to recover for lost profits. The first cross-assignment of error is overruled.
 {¶ 56} In the second cross-assignment of error, Premier contends the trial court should have granted its motion for a new trial. Premier filed a motion for new trial based on Civ.R. 59(A)(7), or in the alternative, Civ.R. 59(A)(9).
 {¶ 57} A trial court has broad discretion to grant or deny a motion for new trial; therefore, we will not reverse the decision of the trial court absent an abuse *Page 33 
of discretion. Ward v. Geiger, 3d Dist. No. 14-05-14, 2006-Ohio-6853, at ¶ 56, citing Bellman v. Ford Motor Co., 3d Dist. No. 12-04-11,2005-Ohio-2777, at ¶ 24, citing Oakman v. Wise (May 25, 2000), 3d Dist. No. 5-2000-01, at *2.
 {¶ 58} Civ.R. 59(A) states:
 A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
 The judgment is contrary to law;
 * * *
 (9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application.
 In addition to the above mentioned grounds, a new trial may also be granted in the sound discretion of the court for good cause shown.
 * * *
 On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and enter a new judgment.
As we noted in our analysis of Premier's first cross-assignment of error, the reason they were not awarded lost profits is due to the speculative nature of the evidence. Civ.R. (A)(7) applies when a judgment is contrary to law, and Civ.R. (A)(9) applies when the trial court's actions at trial constitute an error of law. Neither section applies to the facts of this case.
 {¶ 59} Although Premier cites us to Civ.R. (A)(9), it cites us to the paragraph pertaining to a bench trial. However, a careful reading of the rule *Page 34 
reveals that the paragraph about bench trials is not part of subsection (9). Immediately following subsection (9), the rule states, "In additionto the above mentioned grounds * * * ." (Emphasis added). Civ.R. 59(A). The paragraph relied upon by Premier is not a separate reason to grant a new trial. The clear language of the rule shows that the paragraph was merely intended to provide the court with remedial options upon granting a new trial if the original trial was to the court. For these reasons, we cannot find that the trial court abused its discretion in overruling Premier's motion for new trial. The second cross-assignment of error is overruled.
 CONCLUSION
Having sustained the first assignment error and having overruled all other assignments of error and cross-assignments of error, the judgment of the Union County Common Pleas Court is affirmed in part and reversed in part. This cause is remanded for further proceedings.
Judgment affirmed in part, reversed in part, and cause remanded.
 ROGERS, P.J., and PRESTON, J., concur.
[1] An opinion deciding this appeal was first issued as MarysvilleNewspapers, Inc. v. Premier Printing of Central Ohio, Ltd., 3rd Dist. No. 14-06-34, 2007-Ohio-3838. However, upon granting a subsequent motion for reconsideration, we have vacated that decision and replaced it with the following opinion. *Page 1